(100 South. 442)

Nos. 24416, 24417.

WHITE et al. v. WHITE et al.

SAME v. LOUISIANA OIL REFINING CO. et al.

(May 5, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Evidence** ⬤183(15)—Evidence held to sustain finding that proper search for alleged lost deed had been made.

Where it was sought to introduce copy of deed under which defendants claimed on the

ground that the original had been lost, evidence *held* to sustain the finding that proper search had been made and that the original was in fact lost.

**2. Evidence** ⬤⟞178(3)—**Statute authorizing admission of copy of lost record not affected by statutory requirement of advertising.**

Civ. Code, art. 2270, authorizing introduction in evidence of copy of record on proof of loss of original, *held* not affected by requirement of article 2280 that loss must be advertised within reasonable time.

**3. Evidence** ⬤⟞186(6)—**Recorded copy of lost deed though neither authentic nor private act duly acknowledged, held admissible.**

Recorded copy of deed, original of which had been lost, *held* admissible, under Civ. Code, art. 2270, though it was neither an authentic act nor a private one duly acknowledged.

**4. Deeds** ⬤⟞207—**Sales; finding that signature to deed was in fact made by parties sustained.**

In suit to recover interest in land held by defendant under deed, signature to which plaintiffs denied, evidence *held* to support finding that they had in fact signed such instrument.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Separate suits by Mack White and others against Charles White and others, and against the Louisiana Oil Refining Company and others. Judgment for defendants in each case, and plaintiffs appeal. Affirmed.

Scarborough & Carver, of Natchitoches, and David Blackshear, of Farmerville, for appellants.

Scheen & Blanchard, of Shreveport, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. These suits were instituted by six of the heirs of Stephen White against their coheir, Charles White, to recover a 6/36 interest in certain land in the parish of Claiborne, and to annul a mineral lease granted by Charles White on the property in which they claim the foregoing interest, in so far as the lease affects that interest.

Both sides concede that the lease attacked is no longer in force, and therefore that the suits now involve only the right of plaintiffs to recover their interest in said land. They also agree that the only parties interested in the phase of the litigation still remaining are plaintiffs and the defendant, Charles White.

It is admitted that plaintiffs were at one time the owners of the interest sued for by them, having inherited it from their grandfather, Stephen White; but the defendant Charles White contends that plaintiffs sold that interest to him, in June, 1906, about 14 years before these suits were filed. The plaintiffs concede that there is of record in the recorder's office of Claiborne parish a deed which purports to have been signed by them, transferring to Charles White their interest in the lands in question, but contend that they did not sign the deed, that Robert White affixed their signatures to it, and that he, in so doing, acted without authority. Whether or not plaintiffs executed such a deed is the main issue to be determined.

After the examination of various witnesses by both plaintiffs and the defendant White, with reference to the deed in controversy and its execution, White offered in evidence the recorded copy of it, found in the conveyance records of the parish. The copy was offered instead of the original, because White claimed that the original was lost. Plaintiffs objected to the offering on the grounds: First, that it does not appear that a proper search had been made for the original instrument; and, secondly, upon the ground that it is not shown that its loss had been advertised as required by law.

The record discloses that, after a thorough search for the original deed made by the clerk of court and ex officio recorder of mortgages, it could not be found among the archiv-

es of his office. Defendant testifies that after its recordation, the instrument was delivered to him; that he took it to his home; that he thinks his wife usually kept it there in her trunk; that he searched the trunk, and every place on his premises where he thought the deed might possibly be, but failed to find it.

[1] The evidence satisfies us that the proper search has been made, and that the deed is, in fact, lost.

[2] With respect to the second objection urged, plaintiffs rely on article 2280 of the Civil Code to sustain it. That article provides that—

"In every case, where a lost instrument is made the foundation of a suit or defense, it must appear that the loss has been advertised, within a reasonable time, in a public newspaper, and proper means taken to recover the possession of the instrument."

The purpose of the article is to exclude secondary evidence of the contents of such an instrument when it has been made the foundation of a suit or defense, unless it has been made to appear that there has been a compliance with the conditions prescribed by the article. However, before it may be held that article 2280 excludes the recorded copy of a lost deed, or a copy, duly authenticated, made from the copy of record, unless the loss be advertised in a newspaper, it is necessary to consider article 2270 of the Civil Code, which relates exclusively to the admissibility of such copies. Article 2270 provides that—

"When an original title, by authentic act, or by private signature duly acknowledged, has been recorded in any public office, by an officer duly authorized, either by the laws of this state, or of the United States, to make such record, the copy of such record, duly authenticated, shall be received in evidence, on proving the loss of the original, or showing circumstances supported by the oath of the party, to render such loss probable."

This article treats of a particular phase of the admissibility of secondary evidence, and is in the nature of an exception to the rule established by article 2280; and, being of

such nature is not affected by the requirement as to advertisement found in the latter article. All that article 2270 requires is that the loss of the original be proved, or that circumstances, of sufficient force to render the loss probable, supported by the oath of the party, desiring to offer the copy, be shown

[3] Article 2270, however, expressly refers only to copies made from the recorded copies of authentic acts and of private acts, duly acknowledged. In this case the act was apparently intended to be an authentic one, but fell short of being such an act for the reason that the clerk of court and ex officio notary public before whom it was passed acted not only as notary, but also as one of the two subscribing witnesses. The act cannot be said to be a private one, duly acknowledged, for the reason that it was not acknowledged before the officer mentioned, or before some other officer, authorized to take acknowledgments, in the presence of two witnesses. Therefore the act, being neither an authentic one nor a private one duly acknowledged, is a copy of the recorded copy inadmissible under article 2270, although it appears that it has been proved that plaintiffs signed the original, merely because article 2270 refers expressly to copies of the record of only authentic acts and of acts under private signature, duly acknowledged? We conclude that the copy offered is not inadmissible under the article, if such proof has been made. The only reason why the article is worded as it is, is to make it clear that the copies expressly referred to therein are admissible without further proof than the proof afforded by the copies made from the record of the authentic act, or of the act under private signature, duly acknowledged, that the original was actually signed by the parties thereto. The article contemplates, however, that if the proof of the execution of the original be made otherwise, the copy is admissible under the same conditions as those imposed for the admission of copies.

from the record of authentic acts and of those under private signature, duly acknowledged, which conditions do not include, but rather exclude, the requirement of article 2280 as to advertising the loss in a newspaper.

[4] The next question for decision is whether it has been proven that plaintiffs signed the deed. The original instrument, judging from the copy offered, purports to have been signed by them in person. Robert White testified that plaintiffs were not present when the instrument was signed; that he signed it for himself, and also for plaintiffs. Plaintiffs testified that they were not present when the instrument was executed, and did not authorize their coheir, Robert White, to sign their names to it. On the other hand, the defendant Charles White testified that each of the plaintiffs was present when the deed was executed, and signed it in person. The official before whom the deed was passed testified that he has no recollection of its execution, but that he is positive that he has never passed a deed, signed by one or more persons for others, unless it appeared that they had authority to sign for the others, and then, we gather from his evidence, the signatures were so attached as to show who affixed them; and he further testified that he would not have passed the deed in the form in which it appears to have been executed, unless all of those who signed, as vendors, were present and signed their own names or affixed their marks. B. H. Moore, who, properly speaking, is the only attesting witness to the act, testified that while he does not recall signing the instrument as a witness, yet that he has always made it a practice not to attest an instrument unless he saw the parties sign it or affix their marks to it, or at least, unless they acknowledged in his presence that they had done so, and that he thinks he would not have signed as a witness otherwise. The record also discloses that, immediately after the execution of the deed, the defendant White took actual possession of the property, lived upon it, and cultivated it, and that, for nearly 14 years thereafter, although all of the plaintiffs lived in the vicinity of the property during a part of that time, and most of them during all of it, not one of them entered a protest against the taking of possession of it by defendant, or claimed any revenues therefrom, or asserted any right of ownership to any part of the property, and did not assert such ownership until shortly prior to the institution of this suit, and not until defendant had granted an oil lease on the property, and an expectation had arisen that oil might be discovered in and under it.

In our view it was extremely unlikely that an officer of the law intrusted with the power of passing deeds and of receiving acknowledgments would, in the discharge of the duties of his office, so prepare an instrument, and permit it to be signed in such a manner, as to make it appear that the parties to it were present and signed it in person, when, as a matter of fact, such was not the case. We are, moreover, of the opinion that the conduct of plaintiffs in relation to the property, during the long period mentioned, when they were aware that defendant was in possession of it, and enjoying its fruits and revenues, is utterly inconsistent with any other theory than the one that plaintiffs signed the deed. Hence, in view of the evidence of defendant that all the plaintiffs were present and signed the deed, and in view of the foregoing observations, we have no hesitancy in holding that plaintiffs signed the instrument and that the copy of the recorded copy thereof offered in evidence was correctly held to be admissible by our brother of the lower court.

The finding that plaintiffs signed the deed defeats their demand, there being no question that the copy offered in evidence shows that the original act was sufficient to convey to defendant plaintiffs' interest in the property.

The judgment appealed from is therefore affirmed, plaintiffs to pay the costs.