OVERTON, J.
 

 This is an action in jactitation against J. Wilfred Gaidry and the Industrial City Com
 
 *855
 
 pany, both residents of New Orleans, and a large number of purchasers of lots of ground from the Industrial City Company, the Gaidry Land Company, and others. The land to which plaintiff asserts'title is lots 4, 5, 6, 7, 8, 9, 10, and 11 of fractional section 25, in township 12 south, range 12 east, southeastern land district of Louisiana. It is located in the parish of St. Bernard, near the battlefield of New Orleans, in the immediate rear of the once contemplated village of Versailles, and contains 300.09 acres. The land is marsh land, some of it being very marshy.
 

 Under the titles under which plaintiff claim's, the land, though divided into large lots, each containing a number of acres, is not divided into blocks and streets, but each lot abuts the other, though recently it has been plotted into blocks and streets by Gaidry, the Industrial City Company, or their authors in title, which plaintiff refers to as imaginary blocks and streets, as .they do not, in fact, appear on the land.
 

 The contention of plaintiff is that it is the ' owner of the land in contest here, and is, and has been in the actual, exclusive, and uninterrupted possession, of it, under its title, and through its authors in title, for more than thirty years. Its contention is also that Gaidry and the Industrial City Company, acting together, have beclouded and slandered its title, for the last several years, by selling lots, out of imaginary squares, bounded by imaginary streets, which have not, in fact, existed on the land. The contention is also that the action of Gaidry and the Industrial City Company has damaged it in the sum of §713.20, the cost of a survey, which the action of these parties has made necessary, in order to enable it to ascertain the extent of the slander, and also in the sum of $1,000 attorney's fees for prosecuting this suit. All of the known alleged innocent purchasers of lots were made parties to the suit, as well as Gaidry and the Industrial City Company. The demand is that all of such titles as defendants might. plead against plaintiff^ or which might be exhibited by plaintiff as titles against it, be declared to be clouds and slanders upon its title, and, as such, that they be canceled and erased from the conveyance records of St. Bernard parish. The demand is further for judgment against Gaidry and the Industrial City Company, in solido, for the $1,713.20 damages, mentioned above.
 

 Defendants filed exceptions of vagueness, and Gaidry and the Industrial City Company also filed an exception to the.jurisdiction of the trial court, ratione p'ersonse, in so far as plaintiff’s suit seeks damages against them. The court overruled these exceptions, and defendants, then reserving the benefits of them, filed their answers. These answers deny each of the contentions of plaintiff, and especially deny that plaintiff and its authors in title were, or had been, in the actual and open possession of the property, and by amended answers, which were not allowed, but which should have been in the interests of justice, it is averred, in the alternative, that, if it be found that plaintiff was in possession of the property, then, in that event, defendants are the owners of it, and defendants then set forth their title thereto, the effect of the afnendments being to change what otherwise would have been a straight demand into an alternative demand.
 

 The effect of defendants’ alternative averments and prayers was to convert the action of jactitation into a petitory action, as relates to the assertion of title by them. Against the title pleaded ,by defendants, plaintiff pleaded what it terms an exception of want of registry of a sheriff’s deed, through which defendant claims title, and also exceptions of the prescriptions of ten and thirty years, acqui
 
 *857
 
 rendí causa. Other exceptions were pleaded, hut which we do not find it necessary to mention here.
 

 The exceptions of vagueness rest upon the ground that plaintiff’s petition does not set forth the last date of any act or deed done or caused to have been done by which Gaidry or the Industrial City Company, or any of the defendants, slandered plaintiff’s title. These exceptions are filed upon the theory that, in order to maintain the action of jactitation, it must appear that the slander was committed within the year, prior to the filing of suit. Were we to rule that this theory is correct, nevertheless such ruling would be of no avail to defendants in this case. It is tbe theory of plaintiff’s petition that Gaidry and the Industrial City Company are the slanderers of plaintiff’s title, and that the' purchasers of lots from them were innocent third persons. The'petition sets forth a continuing slander of plaintiff’s title by the making of a number of deeds to various persons, during the past several years, prior to the institution of this suit, and by showing the fact of their recordation, and, by an amended petition, filed before the exceptions were tried, showing that one of these deeds was recorded about three months -before the suit was filed, a reference to the deed showing that it was made - a few days earlier. AYe think that plaintiff’s petition shows a continuing slander up to the time the suit was filed, and, so, thinking, consider, as the trial judge did, that the petition is sufficiently specific not to be amenable to the objection of vagueness.
 

 As to defendants’ exception to the jurisdiction of the court, ratione personae, and also as to plaintiff's exception of want of registry of the sheriff’s deed in the conveyance records, the conclusions we have reached on other phases of the case make it unnecessary that we pass upon those exceptions.
 

 When the pleas of prescription of ten and thirty years, which are pleaded by plaintiff against defendants’ alternative demand, asserting title in themselves, were fixed for trial, defendants objected to the pleas of prescription being heard until it first be ascertained that plaintiff had the right to maintain the action in jactitation by showing that it was in the actual possession of the property, which fact -defendants had denied before pleading title in the alternative. The objection was overruled. It may be that defendants had a technical right to urge this objection, but they were not injured by the ruling. As would be expected, the evidence on the pleas of prescription would show whether plaintiff was in possession when its suit was filed, and for how long. As a matter of fact the evidence shows that plaintiff was in possession then, and for a long time before. Hence, the ruling did not result in injury.
 

 As part of the inquiry into the pleas of prescription, filed by plaintiff, it is necessary to inquire into the deeds, relied upon by it to show title. The property in contest was once owned by John McDonogh by undisputed title. The cities of Baltimore and New Orleans were legatees in McDonogh’s will. Following McDonogh’s death, by unquestioned title, the land, in dispute, in a partition between the two cities, fell to the city of Baltimore. On April 5, 1859, the city of Baltimore sold the land, in contest, to Joseph Pearce for $280.17, part, of which was paid cash, and the balance was made payable on terms of one, two, three, and four years, secured by special mortgage and vendor’s lien on the property sold, the mortgage containing the pact de non alienan
 
 *859
 
 do. On the same day that Pearce purchased from the city of Baltimore he sold the property to Wm. Dunbar, the consideration being part cash, and the assumption of the balance due in his purchase.
 

 Digressing a moment for the purpose of showing the origin of defendants’ title, there was a failure to pay the city of Baltimore the balance of the price due it, and it accordingly foreclosed its mortgage, proceeding against Pearce alone, and disregarding Pearce’s alienation to Dunbar, which it had a right to do, and, at the sheriff’s sale, which occurred in 1867, bid in the property, thereby becoming the owner of it once more. Defendants trace their title to the city of Baltimore after the making of the sheriff’s sale to that city. There is a question as to whether this sheriff’s sale was properly recorded until some forty years thereafter, which, as stated above, we have found it unnecessary to the decision herein to pass upon.
 

 Returning to the chain of title, under which plaintiff claims, Wm. Dunbar, who purchased from Pearce, the city of Baltimore’s first vendee, died, and, in 1866, Hippolyte Galley ostensibly purchased the property, in contest, together with considerable other property, most of which is incidentally involved herein, at Dunbar’s succession sale. Galley held the property a number of years in his own name, but, in 1880, he executed, by notarial act, a declaration, by which he acknowledged that, in purchasing from the succession of Dunbar, he was purchasing for Armand Heine, Michel Heine, and Edward A. Bradford. In 1895, Michel Heine; the widow of Armand Heine, then deceased; Mrs. Blanche Heine, wife of C. A. Fould; the widow of Edward A. Bradford, deceased; Sydney Bradford; and Wm. Bradford sold to A. W. Swaintz what was known as Battle Ground plantation, and then described the plantation as composed of the following tracts, lots, and squares, to wit, naming them, among which are found the squares, or most of them, composing the once proposed Village of Versailles, and also the land, in contest here.
 

 The deed also contains a clause, which declares that none of the streets shown on the plan of Versailles has ever been opened, and that it is not to the knowledge of the vendors that a request has ever been made to open them in conformity with the conditions stipulated by the original proprietors of Versailles, but to the contrary all of the squares sold by the deed, which lie together, have, since 1865, and previously — that is, since the sale to Galley, and prior thereto — been used and occupied as one tract; the vendors do, by reason thereof, transfer and assign to the vendee, without warranty, all their rights, titles, and interest in all the streets, separating said squares, as shown on said plan of Versailles. This deed is important in considering the pleas of prescription, not merely because it purports to convey title, but also because it shows that the land, called for by the deed, which includes the land in contest, is one entire tract, no longer divided, as it were, in any part, into squares and
 
 into
 
 unopened and unused streets, according to an ancient plan.
 

 Returning to the narration of plaintiff’s chain of title, Swaintz, on July 16, 1S95, by notarial act, acknowledged that he purchased the land, described in the deed to him, for the New Orleans & Western Railroad Company. On April 10, 1901, at receiver’s sale, the New Orleans & Western Railroad Company sold to the New Orleans Belt
 
 &
 
 Terminal Company Battle Ground plantation, referring to it as being more particularly described in the act of Swaintz to the vendor, dated July 16, 1895,
 
 *861
 
 which includes, not only most of the entire site of the once contemplated village of Versailles, but also the land in dispute. On De-. cember 26, 1903, the New Orleans Belt & Terminal Company, by notarial act, sold to the New Orleans Terminal Company Battle Ground plantation, stating that it is more particularly described in the deed from Swaintz to the New Orleans & Western Railroad Company, dated July 16, 1895, which, as stated, shows that Battle Ground plantation is one entire tract, including the greater part of the entire site of the once contemplated village of Versailles, and including also the land in contest, which lies immediately to the rear of the contemplated village. On March 12, 1925, the New Orleans Terminal Company, by notarial act, sold to L. A. Meraux and Albert Sydney Nunez the land in dispute and other lands that formed a large part of Battle Ground plantation.' It may be seriously questioned, however, whether this sale included any of the streets, shown on the plan of the contemplated village of Versailles. On August 10, 1926, Meraux & Nunez, by notarial act, sold the land, acquired by them from the New Orleans Terminal Company, to plaintiff.
 

 The pleas of prescription of ten and thirty years, filed by plaintiff, rest upon two grounds. One is that plaintiff and its authors in title have been in the open, notorious, and actual possession of that part of Battle Ground plantation, which was the contemplated site of the Village of Versailles, and which abuts the land in contest, and which formed, under one deed, with the land in dispute, one entire tract. As to this ground, plaintiff relies upon the doctrine that actual possession of a part of an entire tract, included in one deed, is possession of the whole tract. Civ. Code, art. 3498; Handlin v. H. Weston Lumber Co., 47 La. Ann. 401, 404, 16 So. 955. The second ground upon which the pleas of prescription rest is that plaintiff and its authors in title have had for more than thirty years actual possession of the land in dispute by using it for pasturage and the cutting of cross-ties.
 

 Prior to Swaintz’s purchase in June, 1895, the land in dispute, including the site of the contemplated village of Versailles, had been treated as one entire tract, the existence of the streets, as shown on the plan of that village, which never came into being, having been entirely disregarded, except one — Paris avenue — which is now used, in part, as a public road, but which does not affect the question of possession, here involved.
 

 Up to that period, from the time of the platting of the village, its site was divided on a plan into squares, separated by streets, which did not exist on the land itself, or which, at least, were not visible on it. But from the time of the deed to Swaintz, in June, 1895, up to, at least, the deed to Meraux & Nunez, in March, 1925, in the transfers made, the streets were included, after stating that they had never been opened or used as such, but had been used, in connection with the squares, as one tract.
 

 The transfer of the streets, shown on the plan of Versailles, may or may not have been valid. The effect of their transfer, however, which was not unreasonable under the circumstances, was to make the deeds in which they were transferred call for one entire tract, including the land in contest, no part of the land being, as a result, separated from another part by any street. Actual possession, therefore, of a part of the tract, would be, in law, possession of the whole tract.
 

 The possession of the land, constituting the streets, might or might not have been in good faith, but that does not affect
 
 *863
 
 the fact of possession, for good or bad faith is not an ingredient of possession, though, as relates to faith, possession is always held in either good or bad faith. It does not follow that the constructive possession, which flows from that part of the tract actually held, is either good or bad, according to the character of the possession of the part actually held, for good faith flows from an honest belief in the validity of the title acquired (Oiv. Code arts. 3478, 3484), and an honest belief may exist as to the title to'part of the tract, and not exist as to the title to another part of it. Were it otherwise one might acquire title to an'entire tract, to a part of which he doubts the validity of the title, and to another part of which he has no doubt, nor cause for doubt, whatever, and take actual possession of the part, the title to which he doubts, in which event the constructive possession, attaching to the part he acquired in good faith, flowing from the part he held in bad faith, would be deemed to be in bad faith, and, if he took actual possession of the part, the validity of the title to which he had no doubt, nor cauáe for doubt, the constructive possession, flowing from the actual possession, over the part, the title to which he doubted, would be deemed to be held in bad faith. The law never contemplated that such should be the case. It intended that the possession should be deemed to be in good or bad faith according to the belief in the validity of the title of the part to which the possession attaches.
 

 For a period of nearly thirty years, beginning on June 18,1893, the date of the deed to Swaintz, to March 12, 1926, the date of the deed to Meraux & Nunez, Battle Ground plantation was held as one whole, by ea’ch vendee, in each instance, under one deed. During that period, sections of that part of it, where lay the site of the once contemplated village of Versailles, susceptible of cultivation, were cultivated by tenants of plaintiff's authors in title. This possession extended by construction over the whole tract, including the land in contest here, which, as said, lies immediately back of Versailles, adjoining it, and which, though divided into large lots, has never been divided into squares and streets, until comparatively recently, when one of defendants’ authors in title extended lines across it, upon a plan, thereby dividing it into squares and streets.
 

 Had the title of the New Orleans Terminal Company to the land in dispute been attacked at the time that company sold to Meraux & Nunez, it had possession sufficiently long, not only by tacking on to its authors, but by its own acts alone, and a title which would have enabled it to avail itself of that possession, to plead the prescription of ten years. That possession, having attached to the land, passed with the title of the New Orleans Terminal Company to its vendees, Meraux & Nunez, and with their title to plaintiff. It was not lost by either Meraux & Nunez or plaintiff in the two years and a half that intervened between the date of the deed of the New Orleans Terminal Company to Meraux & Nunez and the commencement of this litigation. To the contrary, the evidence shows a clear intention to maintain it.
 

 The record does not show that plaintiff or its authors acquired or held the property in dispute in bad faith. In our view, the plea of prescription of ten years should be sustained.
 

 We do not find it necessary to pass upon the second ground urged by plaintiff as to why the prescription of ten years should be sustained. That ground rests, as heretofore said, upon the use of the land in dispute for pasturage and the cutting of erossties. We
 
 *865
 
 do not find it necessary to pass upon the prescription of thirty years.
 

 As to plaintiff’s claim of $713.20, for damages suffered, in making a survey of the land to determine the extent of the slander, we think that these damages should be disallowed. 176 fail to see wherein a survey could enable one to ascertain the extent-of the damage, arising from a slander. As to plaintiff’s demand for $1,000 attorney’s fees, as damages, we also think that it should be rejected. Attorney's fees, as damages, are not ordinarily allowed. It is certain that, had defendants brought a straight petitory action against plaintiff, plaintiff would not have been allowed its attorney’s fees, as damages. In effect, defendants have brought such an action by converting an action for slander of title into a petitory action, in which they have become the plaintiffs, and the plaintiff the defendant. There is no more reason to allow attorney’s fees in one action than in the other. Moreover, one who in good faith
 
 i
 
 records a deed, or brings about its recordation, which operates as a slander upon the title of another, is not liable in damages. Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 657, 58 So. 500, Ann. Cas. 1913C, 1358.
 

 The trial judge rendered judgment sustaining the plea of prescription of ten years, and recognizing plaintiff as the owner of the property, and allowing plaintiff the attorney’s fees and costs of the survey, sued for by it, as damages. The judgment will have to be amended by rejecting the attorney’s fees and costs of the survey.
 

 For the reasons assigned, the judgment, appealed from, is amended by rejecting the items for the cost of the survey and the attorney’s fees sued for, and, as thus amended, the judgment is affirmed, appellee' to pay the' costs of appeal.