**185 So. 27**

**GARNER et al. v. SIMS et al.**

No. 34903.

Oct. 31, 1938.

Rehearing Denied Nov. 28, 1938.

J. H. Tucker, Jr., and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellants.

Foster, Hall, Barret & Smith and Bryan E. Bush, all of Shreveport, for appellees.

PONDER, Justice.

This is a suit by Fred Garner and F. H. Williams against Ed Sims and several others seeking to have a certain partition declared valid and to have the property acquired in said partition by the plaintiffs declared free from certain mineral claims and a certain mineral lease, and, in the alternative, should the court refuse to recognize the validity of the act of partition, the plaintiffs ask for a partition in kind.

On February 17, 1919 J. S. Teamer transferred to Gracy Ann Young, widow, and her son, Joseph Young, the north half of the southeast quarter of the southwest quarter of Section 13, Township 23 North, Range 16 W. situated in Caddo Parish, Louisiana for a consideration of $400, the purchase price represented by five promissory notes payable in 1, 2, 3, 4 and 5 years after date. On July 19, 1924 J. S. Teamer executed a cash deed conveying this same property to Edward Sims for the consideration of $425 cash. During the year 1928 Gracy Ann Young died leaving six children, viz., Joe, Johnny, Willie, Alice Young Prudhomme, Arabelle Young Morris and Mamie Young Denman. She was also survived by the following grandchildren from predeceased children: Fred Crocker, a child of Earlene Young Crocker, deceased; Mamie, Margie and Lee Arthur Alberta, children of Carrie Young Alberta, deceased; James, Edward, Theola Young Bradford and Florence Young Butler, children of James Young, Sr., deceased. On December 4, 1929 Willie Young, Arabelle Morris, Mamie Denman, Alice Prudhomme, Johnnie Young, Joe Young and J. F. Walters transferred the same property by cash deed for the consideration of $50 to J. S. Teamer. Ed Sims transferred one-half of the mineral interest on September 29, 1930 in the entire property to the Howe Wholesale Grocery Company. The Howe Wholesale Grocery Company on July 9, 1935 transferred one-fourth of the mineral interest in this property to W. S. Golding. Golding transferred the one-fourth interest in this property to the American Liberty Oil Company on February 1, 1936. On June 13, 1935 Ed Sims transferred one-fourth of the mineral interest in the entire tract to M. Carl Jones and E. C. Ferguson. On July 19, 1935 Ed Sims transferred one-eighth of the mineral interest in the entire property to W. N. Deramus and F. H.

Ford. W. N. Deramus transferred 1/32 of the minerals in the property to C. E. Johnston on December 30, 1935. On August 15, 1935 Ed Sims transferred to Sid Regan 1/20 of the minerals in the entire tract. Sid Regan transferred the 1/20 interest on September 14, 1935 to Virgil Pearson.

On December 23, 1935 Fred Crocker transferred 40% of whatever interest he might have in said property to Fred G. Garner. March 13, 1936 Mamie, Margie and Lee Arthur transferred an undivided 1/36 interest in the entire property to Overton Hicks. On July 15, 1936 Ed Sims, Fred Crocker, Overton Hicks, Fred G. Garner, Mamie, Margie and Lee Arthur Alberta and Fred G. Garner and F. H. Williams entered into a voluntary partition of this entire twenty-acre tract of land wherein they asserted that their ownership was in the following proportion: Ed Sims 30/36; Fred Crocker 1/36; Overton Hicks 1/36; Fred Garner 1/36; Mamie, Margie and Lee Arthur Alberta, jointly, 1/36 and Fred G. Garner and F. H. Williams, jointly, 2/36. In the partition certain fractional parts of the tract was transferred to each of the parties. On July 20, 1936 Crocker transferred certain mineral interest in the land received by him from the partition to Fred Williams. On August 1, 1936 Fred G. Garner transferred to Mrs. Daisey Patterson certain mineral interests in his part of the land. On August 3, 1936 he transferred mineral interests to F. W. Williams. On July 31, 1936 he transferred mineral interests to Edmond L. Deramee. F. W. Williams transferred his mineral interest on July 31, 1936 to Edmond L. Deramee. On

March 30, 1936 Fred G. Garner transferred to George Thurber certain mineral interests. On March 2, 1937 Overton Hicks transferred his interest in the property to J. F. Merrick.

There were various other transfers made which are not necessary to this decision.

On September 18, 1934 Ed Sims and the Howe Wholesale Grocery Company leased this property under an oil and gas lease, in a joint lease with other parties, to R. W. Norton. This lease was assigned by R. W. Norton to the United Gas Public Service Company on January 5, 1935.

The plaintiffs Fred G. Garner and F. H. Williams brought the present suit against Ed Sims; against the parties who had acquired mineral interest in the property from Ed Sims prior to the act of partition and their transferees; against the United Gas Public Service Company holder of a mineral lease acquired prior to the act of partition from Ed Sims covering all of the property; and against all the parties to the act of partition, seeking to have the partition declared valid and to have the part of the property acquired by plaintiffs in the act of partition to be declared free from the mineral rights previously acquired and the mineral lease held by the United Gas Public Service Company. In the alternative the plaintiffs ask, in event the partition is set aside, for a partition in kind. Ed Sims and the various other defendants, who were not parties to the act of partition, answered the plaintiffs' petition and interposed the plea of ten years prescription as a bar to plaintiffs' recovery and asked for judgment rejecting plaintiffs' demands, and

in the alternative that if a partition is ordered that it be made by licitation, and not in kind, after separate appraisals have been made of defendants' interest. Upon trial of the case the lower court gave judgment in favor of the plaintiffs as prayed for. After this judgment was rendered the Union Producing Company having previously acquired the rights of the United Gas Public Service Company was substituted as a party defendant in lieu of the United Gas Public Service Company. The defendants have appealed from this judgment.

The testimony pertinent to the plea of prescription was given by three witnesses viz.: Dave Tyson, J. S. Teamer and Ed Sims.

Dave Tyson, who is not a party to these proceedings, testified to the effect that Ed Sims moved on the property in 1923 and has been living there ever since. He testified that no one else has ever been in possession of the property except Ed Sims. He testified that Ed Sims cleared the property, built a house on it, cultivated it and has lived on it continuously since 1923. He also testified that Gracy Ann Young or Joe Young never lived on the property at any time.

J. S. Teamer testified to the effect that his sister, Gracy Ann Young, and nephew, Joe Young, being unable to pay for the property or any part of the purchase price, that he sold the property to Ed Sims in 1924. When he was asked if he had told Ed Sims that his sister and nephew had a deed to the property he answered that he did not tell him in that direction. He stated that he told Sims that his sister was in possession of the property but did not want it and that she having failed to pay for it that he, Teamer, could purchase the property and in turn sell it to Sims. He testified that he and his sister were about to lose the property by being foreclosed on by Mr. Pitts, from whom he had bought the property and to whom he still owed a note for the purchase of it. He stated that he was selling the property through his sister at the time he sold it to Sims. He stated that Sims paid for the property by paying Mr. Pitts the amount he, Teamer, owed Mr. Pitts. He testified that when he first talked to Sims about selling the land that he told Sims that it was a little part belonging to his sister who had undertaken to buy it and had failed and that if Sims could pay the same amount his sister was to have paid that he, Teamer, was sure that Sims could buy the property through him. He testified that Sims at that time told him that if he could clear the money in the fall he would buy it and that Sims cleared the money in the fall which Sims turned over to him, Teamer, and he, Teamer, in turn turned it over to Mr. Pitts in payment of his note. Thereupon, Teamer executed a cash deed to Sims. He testified that before he could acquire the title from his sister and nephew, his sister died and that he acquired a deed from Joe Young and all of his sister's heirs except those who set up an interest in the partition, whose interest he was unable to acquire.

Ed Sims testified that Teamer did not tell him anything about his sister having a deed to the property but told him that she

had bargained for it and was unable to pay for it. He stated that he did not think she could be given a deed until she paid for the property and that if Teamer had told him that he had given a deed to his sister he would not have bought under those terms. He testified that he moved on the place, cleared it up, built a house on it, began farming and that he has been in possession of it ever since the date he acquired it. He stated that his first knowledge that Fred Crocker was claiming any interest in this property was when the oil field came in at which time Fred Garner told him there were heirs to the property. He stated that he did not know there were any heirs to the place and he so informed Garner at that time.

From the record it appears that Ed Sims is an uneducated negro knowing practically nothing of land titles and that this is the only property he ever owned. From the testimony as a whole it appears that in 1920 or some time prior to 1924 Ed Sims bargained to buy this property from J. S. Teamer and paid him for it. In 1924 Teamer executed a cash deed to Sims. At the time the land was acquired by Sims it was undeveloped. It appears that at the time Sims went upon the property it was undeveloped and that Sims improved the place and built him a home upon it. It appears that Sims has been in possession of the property continuously until this date. There was never any claims of ownership made to Sims by the heirs of Gracy Ann Young until after ten years from the date Sims acquired the property. It appears from the testimony that when Teamer sub-

sequently acquired the interest of Joe Young and some of the heirs of Gracy Ann Young that he has not to this date transferred that title to Sims and did not at the time he acquired it or prior to the time of the trial of this case inform Sims of that fact. To an extent this discredits Teamer's testimony. The fact that Sims went on the property with a title that properly described it, built on it, improved it and has had undisputed possession of the property for more than ten years before anyone questioned his title shows that Sims was a possessor in good faith under a title translative of property. From the testimony Sims believed at the time the deed was executed to him that he was getting a good title to the property. Article 3478, Revised Civil Code reads:

"He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."

Article 3451, R.C.C. reads:

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."

Article 3481, R.C.C. reads:

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."

In the case of Meraux & Nunez v. Gaidry, 171 La. 852, 132 So. 401, it was held to the effect that good faith flows from an honest belief in the validity of the title acquired. All that is necessary to constitute possession in good faith upon which prescriptive title may be based is that the possession shall be by virtue of a title valid in form and acquired from one whom the possessor believed to be the owner of the property. Kees et al. v. Louisiana Central Lumber Company et al., 183 La. 111, 162 So. 817; Ruth v. Buwe, 185 La. 204, 168 So. 776.

The defendants or their authors in title who acquired the mineral rights and lease from Ed Sims prior to the act of partition acquired it at a date when Ed Sims had been in actual physical possession under a title translative of property for more than ten years obtained in good faith. At the time these rights were acquired under the circumstances in this case Ed Sims was a possessor of the property in good faith for more than ten years under a title translative of property. Those acquiring these rights at this date acquired valid title to them. The fact that Ed Sims subsequently entered into a voluntary partition recognizing the plaintiffs' interest in this property could not effect the previous transfers of mineral rights or the lease. In so far as Ed Sims is concerned he could relinquish his title to the property to the extent claimed by the plaintiffs but in doing so he could not relinquish or renounce the interest of the defendants.

Ed Sims in his answer alleged that he was ignorant, uneducated, unable to read and write; that he signed the act of partition by his mark but was ignorant of its contents; that he was induced to sign it through error, mistake and undue influence on the part of other parties to the act; and that no consideration was passed to him for signing the deed. While these allegations were made and while the testimony goes to show that Sims still maintains that he is the owner of the property, yet there is not sufficient testimony to show fraud or error to set aside the act of partition.

Considerable authorities were cited with reference to partition but all were dealing with judicial partition and are of no value in the determination of this case. It was urged that mineral lands cannot be partitioned in kind but must be partitioned by licitation and decisions cited to that end. The cases cited all refer to judicial partition and no case has been cited or no law referred to that prohibits parties who own the fee of property from entering into a voluntary partition. However, as in this case, where the parties enter into a voluntary partition it cannot affect the rights of those having valid mineral rights and mineral leases on or in the property. In the case of Coyle et al. v. Geoghegan, 187 La. 308, 174 So. 366, it was held to the effect that a recorded lease being an incumbrance on the property it follows the property into the hands of the purchaser and a vendee takes it subject to the lease. In the instant case the plaintiffs and their au-

thors having failed to assert any claim or interest in the property until after the prescriptive period had run and permitted third persons to acquire an interest in and on the property from a possessor in good faith under a title translative of property cannot defeat the defendants' rights. The defendants herein have the right to plead prescription. If there were any doubt of a lease holder having the right to assert title by interposing a plea of prescription under the circumstances in this case, Act No. 205 of 1938 eliminates that doubt. The holders of mineral rights under the doctrine laid down in Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 194, 171 So. 846, having a real right in the property would have the right to urge prescription.

We conclude that the plea of prescription should be maintained as to all of the owners of mineral interest and the holder of the lease acquired from Ed Sims prior to the act of partition. We also conclude that the act of partition being a voluntary one is valid but subject to the previously acquired mineral rights and the lease. We further conclude that Ed Sims having joined in the voluntary partition relinquished or renounced his interest in the fee of the property to the extent of plaintiffs' claims. Having arrived at these conclusions it is unnecessary to pass on the alternative demands.

For the reasons assigned the judgment of the lower court is reversed and set aside and plaintiffs' demands are rejected at their cost.

O'NIELL, C. J., concurs in the decree.

LAND, J., absent.