200 So. 806

**DUPUY et al. v. JOLY et al.**

No. 35851.

Feb. 3, 1941.

Rehearing Denied March 3, 1941.

Samuel J. Tennant, Jr., and Gill & Simon, all of New Orleans, and Plauche & Plauche, of Lake Charles, for plaintiffs and appellants.

Obier & Middleton, of Plaquemine, Denegre, Leovy & Chaffe and Jacob H. Morrison, all of New Orleans, Pujo, Hardin & Porter and McCoy & King, all of Lake Charles, Harvey G. Fields, of Farmerville, and Liskow & Lewis, of Lake Charles, for defendants and appellees.

ROGERS, Justice.

This is one of the numerous suits arising from the discovery of oil in the State of Louisiana. It is a petitory action in which the plaintiffs originally sued for an undivided three-fourths interest (now apparently reduced to a one-fourth interest) in the East half of Section 29, Township 8 South, Range 11 East, situated in the Parish of Iberville.

Defendants have been in possession of and have paid taxes on the land for a period of twenty-five years. The property in dispute was acquired by Valsin J. Dupuy who purchased the interests of various owners in the years 1858, 1859 and 1865. At the time of these various purchases, Valsin J. Dupuy was married to Ellen Schlater and therefore they enured to the benefit of the matrimonial community existing between Dupuy and his wife.

In 1867, in a settlement of property, Valsin J. Dupuy, by dation en paiement, conveyed the tract of land to his wife, Ellen Schlater Dupuy. Valsin J. Dupuy died intestate during the year 1896, and his wife, Ellen Schlater Dupuy, died intestate on December 31, 1899. Dupuy and his wife were survived by four children, viz., Paul Dupuy, Lillian Dupuy Norsworthy, Ellen Dupuy Etter, and William M. Dupuy. Ellen Dupuy Etter died in the year 1912 intestate and without issue. William M. Dupuy disappeared in the year 1897 after the death of his father and before the death of his mother, and there is nothing

to show that he was alive, or if deceased, that he left any heirs at the dates of the death of his mother and his sister.

On March 14, 1914, Paul Dupuy and Lillian Norsworthy Dupuy, by separate deeds, sold, without warranty, to Anatole Joly all their rights, titles and interests in and to the property in dispute. Both deeds appear recorded in the conveyance records of the Parish of Iberville. Lillian Dupuy Norsworthy died intestate on September 8, 1938, leaving six children as her heirs.

Plaintiffs are Paul Dupuy, the children and heirs of Lillian Dupuy Norsworthy, and Samuel J. Tennant, Jr., who acquired one half of their interests in the property.

The defendants are Anatole Joly, the vendee of Paul Dupuy and Lillian Dupuy Norsworthy, the Schwing Lumber and Shingle Co., Inc., and a number of persons who acquired interests in the property from Joly.

Plaintiffs' claim, as set out in their petition, is that Paul Dupuy was the only one of the children to accept the succession of Valsin J. Dupuy and therefore the interest of each of his co-heirs lapsed in his favor at the expiration of thirty years resulting in an accretion in his favor of a three-eighths undivided interest in the property; that Paul Dupuy and his sisters, Lillian Dupuy Norsworthy and Ellen Dupuy Etter, accepted the succession of their mother, but that William M. Dupuy did not, and therefore the one-fourth interest of William M. Dupuy lapsed in favor of his co-heirs; and that the interest inherited by Ellen Dupuy Etter in her mother's succession was inherited by plaintiffs. In other words, Paul Dupuy and his co-plaintiffs, the children of Lillian Dupuy Norsworthy, alleged that by the inheritance and liberative prescriptions above mentioned, they are the fee owners in indivision of the property in dispute, with the exception of the interest sold by Paul Dupuy to the defendant Anatole Joly in 1914.

Defendants denied the claim of ownership set up by plaintiffs and averred that all the interests in the property claimed by them were divested in favor of Anatole Joly by the two sales made to him in the year 1914. Defendants alternatively pleaded an estoppel against plaintiffs, basing the plea on the proceedings in the succession of Mrs. Ellen Dupuy Etter which was opened in the Parish of Iberville in 1937, and also further in the alternative, they pleaded the prescription of ten years' acquirendi causa against plaintiffs' claim.

The trial judge held that all the rights and interests of the plaintiffs in and to the property had been divested by the two sales made by Paul Dupuy and Mrs. Lillian Dupuy Norsworthy to Anatole Joly in the year 1914, and also that the plea of ten years' prescription acquirendi causa was well founded. The trial judge accordingly rejected all the claims and demands of the plaintiffs against the defendants and recognized the defendants as owners or lessees, according to their respective interests in the property in dispute. The plaintiffs appealed.

The trial judge assigned as one of the grounds for rejecting plaintiffs' demands

that the defendants' plea of ten years' prescription acquirendi causa was well founded. We think his findings are correct, and for that reason, we shall limit our discussion to that phase of the case.

At the outset of the discussion it is necessary to dispose of defendants' contention that there is nothing to show that Lillian Dupuy Norsworthy sold any interest in the property to Anatole Joly; and further that the instrument offered in evidence purporting to be such a deed was not authorized by her husband, and that the instrument itself was not properly acknowledged. On this controverted issue we quote, with approval, from the opinion of the trial judge as follows:

"The Court found the evidence on this point to show that Lillian Norsworthy did execute an instrument similar to that executed by Paul Dupuy on the 14th day of March, 1914 (see testimony of Paul Dupuy). The evidence clearly shows that this instrument was recorded in the Parish of Iberville at Book 42, Entry 374 (the deed from Paul Dupuy being recorded at Book 42, Entry 375). The evidence shows that the original Norsworthy deed had become misplaced and lost, and the Court permitted the record Book 42, Entry 374 of the records of Iberville Parish to be introduced in evidence.

"The recorded copy of the Norsworthy deed shows that for the sum of $250.00 Lillian Norsworthy sold all of her rights, title and interest in and to the property in question to Anatole Joly. The deed was dated March 14, 1914. W. G. Norsworthy signed the deed also as husband. The execution of the deed was witnessed by Paul Dupuy, one of the plaintiffs herein, and Price, the Notary. The acknowledgment was made by Price, who had also acted as a witness. Paul Dupuy testified that his sister, Lillian Norsworthy, did sign a quitclaim on the date on which he signed his own deed. He was under the impression that both he and his sister had signed the same deed, however he testified that he did see her sign, and acted as a witness, which is evidenced by the recorded copy of the deed which was introduced in evidence. Paul Dupuy was under the impression that Lillian Norsworthy had signed a "quitclaim", and the deed which was actually signed amounts to nothing more than a quitclaim, as it contains no warranty whatsoever.

"Reiterating then, one of the witnesses saw Lillian Norsworthy sign the deed, and so testified. There is evidence that the original was lost, and under Article 2270 of the Civil Code and the case of White v. White, 156 La. [324], 328 [100 So. 442], a recorded copy of the original is sufficient evidence of the sale. The original deed was signed by W. G. Norsworthy, husband, which answers the objections as to lack of authority by the husband to sign.

"In the opinion of this Court, the plaintiffs are complaining of irregularities in the deed, and not of legal defects, and in the opinion of this Court the sale was sufficiently proven and was and is binding upon the heirs of Lillian Norsworthy."

The record shows that after the death of their father and mother in 1896 and

1899, respectively, and their sister, Ellen Dupuy Etter, in 1912, Paul Dupuy and his sister, Lillian Dupuy, inherited the tract of land in its entirety, subject only to a possible outstanding interest in their brother, William M. Dupuy, who had disappeared in 1897. Therefore, the only obstruction, as against a complete record title to the property in Paul Dupuy and Lillian Dupuy Norsworthy in 1914, when they sold all their "rights, titles and interest in and to" a tract of land to Anatole Joly, is the possibility that William M. Dupuy survived and at one time would have had a right to claim an interest to the property.

The record further shows that none of the heirs knew of the existence of William M. Dupuy at the time of the death of his mother in 1899 or thereafter.

In a letter dated May 13, 1937, written on behalf of his mother, Walter Norsworthy, a son of Lillian Dupuy Norsworthy, and one of the plaintiffs in this suit, stated that William M. Dupuy had written "his mother, Ellen Dupuy, that he was going to St. Louis and that was the last ever heard of him."

The record makes it plain that because the existence of William M. Dupuy was unknown, and Valsin J. Dupuy, Ellen Schlater Dupuy, and Ellen Dupuy Etter were dead, Paul Dupuy and Lillian Dupuy Norsworthy claimed and sold the property as the fee owners.

Anatole Joly, the purchaser, took actual possession of the land in the year 1916, at which time it was covered by a heavy growth of timber. The timber was deadened and the necessary tracks and float roads were cut for the removal of the timber, which took place in the following years, during the periods of highwater in the swamp. These timber and logging operations extended over the whole tract and resulted in the removal of all the merchantable timber on the tract. As late as the year 1927, the land was worked for the purpose of scrapping the timber, but at that time very little timber remained on the property. In the years 1919 and 1920, a number of men were employed in gathering moss which was abundant among the trees. The testimony shows that the land was swampy in character, subject annually to overflow and that it was unfit for any other use than that to which it was put by Joly, or by others holding under him. This character of possession has been held to be sufficient to form the basis for the prescription of ten years' acquirendi causa. Kees v. Louisiana Central Lumber Company, 183 La. 111, 162 So. 817; Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442.

The fact that a deed excludes all warranty, or is a mere quitclaim deed, does not prevent the prescription from running. Screen v. Trainor, 172 La. 51, 133 So. 359, citing Land Development Co. v. Schulz, 169 La. 1, 124 So. 125.

The corporeal possession of the land held by Anatole Joly and his vendees was retained by him by the paying of taxes and by looking after the property for more than twenty-five years. Screen v. Trainor, supra.

"He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *" Civil Code, Art. 3478.

It is not disputed that the title and possession under which defendants hold are a sufficient basis to sustain the plea of prescription. But it is disputed that defendants acquired the property in good faith, and for that reason plaintiffs argue that the prescriptive title pleaded can not prevail.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Civil Code, Art. 3481. A number of cases in our jurisprudence have applied the rule laid down in the codal article. One of the latest of these cases is Coleman v. Pollock, 191 La. 813, 186 So. 346.

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." Civil Code, art. 3451.

■ In Garner v. Sims, 191 La. 289, 185 So. 27, the Court, citing Meraux & Nunez v. Gaidry, 171 La. 852, 856, 132 So. 401, and other cases, held that good faith flows from an honest belief in the validity of the title acquired, and all that is necessary to constitute possession in good faith for the basis of a prescriptive title is that the possession shall be under a title valid in form and acquired from one whom the possessor believed to be the owner of the property. Anatole Joly, and his vendees,

took actual possession and operated the property as its owners shortly after they had acquired it. The fact that Anatole Joly purchased the property from Paul Dupuy and Lillian Dupuy Norsworthy without warranty was not sufficient to put Joly on notice that the title of his vendors was limited. Screen v. Trainor, supra.

■ And the presumption of good faith is not destroyed by proving that the vendee had the means of obtaining knowledge of the defect in his title. Keller v. Summers, 192 La. 103, 187 So. 69.

■ In connection with their charge of bad faith, plaintiffs make much of the fact that shortly after he had acquired the property, Anatole Joly transferred to certain persons an undivided interest in the property. Plaintiffs argue that these transferees were well known as "lumber people and especially was this fact known to Paul Dupuy." That these parties would have had difficulty in purchasing the property if they had directly approached Paul Dupuy for that purpose. Even if this were true, we fail to see how that fact could affect the good faith of the purchasers, so far as the validity of the title to the property is concerned.

Plaintiffs do not attack the deed executed by Paul Dupuy and Lillian Dupuy Norsworthy to Anatole Joly in 1914 on the ground of fraud. Joly paid each of his vendors the sum of $250 which, on its face, was a substantial consideration for the purchase of the property in 1914.

■ The burden was on plaintiffs to prove bad faith flowing from actual knowl-

edge, first, on the part of Anatole Joly, who purchased the property in 1914, and then on the part of the other defendants, who purchased a four-fifths interest in the land and are in possession of it under their respective titles.

According to the record, plaintiffs have not carried that burden.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., and LAND, J., take no part.