333 So.2d 250 (1976)
OLINKRAFT, INCORPORATED, Plaintiff-Appellant,
v.
Robert Spencer ALLEN, Defendant-Appellee.
No. 12909.
Court of Appeal of Louisiana, Second Circuit.
May 24, 1976.
*251 Shotwell, Brown & Sperry by Edel F. Blanks, Jr., L. Michael Ashbrook, Monroe, for Olinkraft, Inc.
James T. Spencer and James M. Dozier, Jr., Farmerville, for Robert Spencer Allen.
Before PRICE, HALL and JONES, JJ.
JONES, Judge.
Olinkraft, Inc. filed this possessory action against Robert Spencer Allen and C. O. Brown on March 28, 1974, alleging that in May, 1973, the defendants had disturbed plaintiff's possession of a part of its property located in Union Parish, Louisiana. That property is described as follows:
NE/4 of NW/4 lying North of the Creek; and all that part of the NW/4 of NW4 lying North of the Creek that runs through the South side of said forty, being all that part of said forty not owned by the Monroe Grocer Co., all in Section 26, TWP 23 North, Range 2 East, Union Parish, Louisiana.
Plaintiff complained that defendants disturbed its possession of a part of that tract by cutting and removing timber from the land.
C. O. Brown answered denying that he had cut any timber from the described property. Robert Spencer Allen answered admitting that he had cut and removed timber in May, 1973 but that these operations were conducted on the following property:
The NW/2 of NW/4, lying south of creek in Section 26, Twp. 23 North, Range 2 East, Union Parish, Louisiana.
Allen further asserted that plaintiff had not been in quiet and uninterrupted possession of the property in dispute for more than a year prior to the alleged disturbance. After a trial on the merits, judgment was rendered in favor of defendants rejecting the demands of plaintiff. Plaintiff appeals.
The evidence reveals that plaintiff had acquired title in 1967 of a tract of land north of the Creek that runs through the South side of said forty. Plaintiff's vendor had acquired title to the tract in 1952.
Documents in evidence reveal that in May, 1971 title to all that property in the quarter lying South of Creek was passed to Pine Hill Wood Company, Inc. In August, 1972 Pine Hill Wood Company, Inc. conveyed all its interest in the property to C. O. Brown, who in that same month conveyed the property to defendant Allen.
An examination of the map of survey introduced into evidence reveals that the confusion in this case arises because the deeds of both plaintiff and defendant Allen refer to a creek as the southern boundary and northern boundary, respectively, of their properties without naming the creek or attempting to locate it with any particularity. There are two creeks running generally east and west in the quarter. Olin views the southernmost creek as its southern boundary while Allen views the northernmost creek as his northern boundary. The dispute is as to the possession of the property between the two creeks.
LSA-C.C.P. Art. 3658 provides:
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;

*252 (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
LSA-C.C.P. Art. 3660 provides in pertinent part:
A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.

* * * * * *
When the property description in the title under which the plaintiff claims ownership is not sufficiently clear to show the limit to which he intends to possess, the plaintiff must show actual and corporeal possession of the property. Antulovich v. Whitley, 289 So.2d 174 (La.App. 1st Cir. 1973). His possession must be evidenced by an enclosure of some kind to definitely fix its limits, or it must be evidenced by some external and public signs sufficient to give notice to the public of the character and extent of the possession. Johnson v. La Bokay Corporation, 326 So.2d 589 (La.App., 3d Cir. 1976) and cases cited therein.
Enclosures were explained by the Supreme Court in Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952) thus:
What the court means by "enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. * * * Id. p. 440.
The possession required to entitle one to bring the possessory action is identical to the possession which is required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975). The quality of possession required in a particular case depends not only on its classification as good faith or bad faith possession, but also on the type of land in dispute. Liner, supra; Boagni v. Pacific Imp. Company, 111 La. 1063, 36 So. 129 (1904). Once the actual and corporeal possession has commenced, it may be preserved by external and public signs announcing the possessor's intention to preserve the possession of the thing. LSA-C.C. Art. 3501.
Plaintiff contends that it conducted sufficient activity on the property in 1961 to amount to actual possession.
The creek which plaintiff claims as its south boundary is hardly more than a small branch. Even if this could be considered a natural enclosure, there were two streams relatively close to each other which would have limited the effectiveness of either of the streams, or branches, in defining the boundary of the tract.
The block forester who was in charge of the acreage in 1961 testified at trial. He stated that when he examined the tract in 1961 he found a dim yellow line, i. e., marks on trees along the boundary, marking the southern boundary. There was no evidence beyond supposition by one of plaintiff's witnesses as to who painted that yellow line. He stated that he walked over the entire tract, about 100 acres, only about 10 of which are the subject of the dispute here, to determine if it was suitable for logging operations under the weather conditions *253 existing at that time. Pursuant to his instructions, technicians marked with yellow paint those trees suitable for logging. This apparently amounted to some 10 to 15 trees on the ten acre tract in question. A tally was subsequently made from this marking. Later in 1961, a logging contract was consummated with an individual who, with about 12 men, 4 skidders and three trucks, spent about two weeks on the entire 100 acres removing the marketable trees. Again, this only amounted to 10 to 15 trees on the disputed tract, and, although the time required to remove them is not stated, it could not have been more than one or two days. The operation necessitated pushing a temporary sand structure across one of the streams with a bulldozer for access to the property. The next time any action was taken with regard to this tract was in 1970 when the yellow line was finally repainted by the plaintiff.
After hearing all the testimony and reviewing the jurisprudence on the subject, the trial court concluded that plaintiff's activity in 1961 did not amount to sufficient corporeal possession to begin the running of acquisitive prescription, or therefore, entitle plaintiff to maintain the possessory action. The trial court concluded, further, that if the 1961 acts were sufficient to constitute corporeal possession, the possession was not continued with other acts of corporeal possession nor did plaintiff maintain those external and public signs that would have preserved the initial actual possession by subsequent civil possession. On the evidence viewed as a whole, we agree with the trial court.
The 1961 activities by Olin involved no more than a dozen men removing timber from a 100 acre tract in the short span of two weeks. The personnel of Olin admitted that most of that activity occurred north of the northernmost stream which traverses this quarter-quarter section. There is no evidence that any action was taken by Olin before 1970, other than the marking and tallying of the 15 trees ultimately removed from the disputed tract, either before or after the two week logging operation in 1961. The only activity of which there was evidence was the repainting of the boundary line, which consisted of painting yellow marks on trees at the edge of the tract in 1970. It was pointed out that the 1970 line did not correspond to the old line, or at least the exact location of the old line could not be determined in certain areas, at the time of the repainting of that line.
The trial judge, in his excellent analysis of the jurisprudence in his reasons for judgment, correctly pointed out that while less possession is required of woodland than of farm land, the cases holding that there were sufficient acts of possession of woodland all involved more extensive activities on that land than exhibited by plaintiff on the subject tract. See Antulovich v. Whitley, supra, where the court found that having a survey and marking the line with paint every three to five years, making three timber sales from property and executing two mineral leases, constituted sufficient possession; Veltin v. Haas, 207 La. 650, 21 So.2d 862 (1945), where yearly cutting and removing of timber from swampland found to be sufficient for acquisitive prescription; Dupuy v. Joly, 197 La. 19, 200 So. 806 (1941), where deadening the timber, conducting logging operations over the whole tract, and conducting moss-gathering operations by a number of men during two consecutive years on swampland amounted to possession; Baldwin v. Arkansas-Louisiana Pipe Line Company, 185 La. 1051, 171 So. 442 (1936), where cutting and removing all merchantable timber on an 80 acre tract and building a logging railroad and using it for seven or eight years held sufficient possession for acquisitive prescription; Hill v. Richey, supra, where fencing or remains of old fencing, blazes and hacks on trees by a surveyor, and No Trespassing signs along the boundary with grazing of animals, cutting and removing timber for eight months, etc., amounted to sufficient possession.
*254 We think the facts of the instant case are more analogous to those cases finding insufficient possession to commence the running of acquisitive prescription or to entitle one to relief by way of the possessory action. See Nixon v. English, 207 La. 906, 22 So.2d 266 (1945) where timber cuttings on a small portion of a 40 acre tract without marked boundary lines were held insufficient possession for acquisitive prescription; Lacroix v. Crane, 133 La. 227, 62 So. 657 (1913), where occasional cutting and removal of timber from overflowed lands, and the paying of taxes thereon were held insufficient for actual corporeal possession; Howell v. Metropolitan Land Company, 127 La. 399, 53 So. 664 (1910) where occasional cutting of cordwood and making of staves, and the hauling and floating out of same, along with paying taxes for some years, were held insufficient possession of a large swampland without sufficient boundary markings; Frederick v. Goodbee, 120 La. 783, 45 So. 606 (1908) where cutting of trees in small quantities and at long intervals over a 31 year period on an isolated tract of swampland were held to be insufficient corporeal possession for acquisitive prescription.
Nor can we say that the repainting of the boundary line in 1970 was a sufficient act of corporeal possession to support the possessory action. If this single act would amount to sufficient possession, our conclusion with respect to Olin would be the same. Defendant Allen testified that he painted his own line along the northernmost creek at least one year before removing the timber in May, 1973. If Olin's actions in 1970 were sufficient corporeal possession to support the possessory action, then the 1972 actions of defendant or his ancestors in title of surveying the property, painting the boundary line and making numerous inspections of the property, along with the Olin management's admission that company logging operations were delayed two years because of his adverse claim of ownership, would amount to a subsequent dispossession of Olin. If they were indeed dispossessed in 1972, the requisites of LSA-C.C.P. Art. 3658(2), (4) could not be met.
The evidence does not disclose sufficient possession by plaintiff to entitle it to judgment.[1]
For the foregoing reasons, the judgment of the lower court is affirmed at appellant's cost.
Affirmed.
NOTES
[1] Since we find insufficient corporeal possession by Olin, we do not reach the question of whether civil possession can only be maintained for ten years. See LSA-C.C. Art. 3444 and Manson Realty Company v. Plaisance, 196 So.2d 555 (La.App., 4th Cir. 1967).