McBRIDE, Judge.
This appeal involves an action in boundary, the petition alleging that the dividing line between the property of plaintiff and the defendants is indeterminable. Plaintiff prayed for a surveyor of this city to be appointed by the court and sworn to inspect the premises involved, and to make a survey of the lands described in the petition, ascertaining the limits of the respective owners, and to make a proces verbal of his work, in the presence of two witnesses, and tO' file the same in court, according to law, and that, after due proceedings had, there be judgment in favor of plaintiff and against the defendants establishing the boundary line and describing the areas of the respective owners, all in accordance with the survey made by the surveyor appointed by the court.
In due course, E. L. Eustis, surveyor, was appointed by the judge and sworn to inspect the premises described in the petition, to survey the same and report thereon, in writing, to the court.
The defendants, who are Asset Realization Company, Inc., and Richard J. Patin, interposed various exceptions to the petition, viz., vagueness and indefiniteness, misjoinder and nonjoinder of parties defendant, no right or cause of action, and prematurity. After these exceptions were heard and overruled by the court a qua, defendants answered the suit. Asset Realization Company, Inc., alleged that it had always been ready and willing to have the boundary line fixed by mutual agreement, but that plaintiff refused to enter into negotiations looking to that end. It prayed for a dismissal of the suit, . and alternatively that if plaintiff persists in his refusal to an extrajudicial fixing of the boundary, then all the costs and expenses of a judicial survey be taxed solely against him. Patin prayed for a dismissal of the suit upon the ground that a judicial establishment of the boundary line is unnecessary, for the reason that the boundary line between the properties has long been fixed by surveys, and that plaintiff and Patin, as well as those from whom they purchased, have for many years occupied their respective properties without any dispute or complaint of any kind.
On January 17, 1950, E. L. Eustis, the surveyor appointed by the court, made a preliminary report to the judge below, which in part recites: “(4) — Between the West boundary of Mr., Lucas and the East Boundary of the Asset Realization Co., Inc. and Mr. Patin (Wilson Street) there exists over, and above, the combined widths of the titles of the plaintiff and the defendants: — 12 feet 1 inch and 2 lines of surplus measurement, or between the two above mentioned boundaries there exists an actual measurement of 218.10.3 instead of 206.9.1”
Eustis asked "to be instructed as to the legal manner in which this surplus should be handled.”
After receiving the surveyor’s preliminary report, .the court held, in chambers, a pretrial conference, at which the attorneys for all parties, as well as the surveyor, were present. At the conclusion of the discussion, the court “ * * * was of the opinion that it could not instruct Mr. Eustis as to how and in what manner he should make his survey and his final report, because he was the surveyor and expert appointed'and he should, therefore, make his report 'according to his findings and his expert knowledge and skill as a civil engineer and surveyor. Therefore the said E. L. Eustis, surveyor and expert appointed heretofore,, is now instructed to complete his .survey, and make his final report to the Court without delay.”
Subesquently, the surveyor completed his work and submitted his proces verbal and plan of survey, which were opposed by the plaintiff. It may 'be recited here that Eustis disposed of the excess or *654 surplus, which he ultimately determined to be 12 feet 1 inch and 1 line, by placing if between the western edge ■ of Wilson Avenue and the established eastern property line of the defendants.
After the case had been regularly set down for trial and heard on its merits, plaintiff’s opposition tO' the proces verbal and plan of survey were overruled, and the boundary line between the respective properties of the litigants was established in accordance with the proces verbal and plan of survey submitted by E. L. Eustis, surveyor. The judge fixed the fee of the official surveyor at $500, to be borne proratably 'by all of the parties.
This appeal was taken by plaintiff from the judgment. The defendants have answered the appeal, praying that the judgment be amended so as to tax the amount of the surveyor’s fee solely against plaintiff.
Before us, defendants made but slight and passing reference to their exceptions. In brief, Asset Realization Company, Inc., conceded that the exceptions of vagueness and misjoinder are of no' importance now that the case has been tried on its merits. The brief further states that the exceptions of no cause or right of action and non-joinder would be “discussed somewhat in connection with the discussion of the evidence.” It is apparent that the defendants are not insisting upon a maintenance of their exceptions, but rather they rely on the merits of the case for success, and we take it that they have waived the exceptions, and we address ourselves solely to the merits.
Stripped of any seeming complexities, the focal point in this case is simply this: Did the official surveyor correctly dispose of the surplus strip of ground measuring 12 feet 1 inch and 1 line by a depth of some 3000 feet? Plaintiff vigorously contends that the surplus should have been alloted to Lot No. 23, which is involved in this action, and that the boundary line between the western and eastern halves of the lot should be established only after taking the surplus ini» consideration. On the other hand, defendants argue that the surplus or excess does not belong to or form any part of Lot No. 23, and that the surveyor correctly eliminated it in calculating the line 'between the two halves of the lot.
The parties all trace their ownership back to a common ancestor in title. The chronology of their title and ownership, so far as material to the case, can briefly be set forth thus:
Lot No. 23 lies on the northern side of New Gentilly Highway at the intersection of a proposed Wilson Avenue (which has not as yet been officially dedicated or opened), and is located in Section 40, T 12 S, R 12 E. Lot No. 23, together with other property was acquired by Cecilia S. Bass and Ermeldia Janis Bass by inheritance from their deceased mother, Cecilia Temple Bass, whose succession was opened in the Civil District Court for the Parish of Orleans under docket No. 112-305, by judgment dated December 4, 1918, C.O.B. 305, folio 231.
On July 22, 1930 (C.O.B. 454, folio 656), the Bass heirs sold to Henry W. Hauffe all of Lot No. 23, measuring “ * * * 1 arpent 14 feet 10 inches front on Gentilly Road or as shown on the said plan 206 feet 9 inches front on Gentilly Road by a depth of 20 arpents except that portion taken for the New State Highway approximately 110 feet. Said property herein sold, being all of lot No. 23 as designated by a plan by M. J. Seghers, D.C.S., dated July 26th, 1918 and on plan by L. Pilie dated March 8th, 1859 and as shown on survey by E. Sutch, dated July 5, 1930, * * *”
The Pilie plan dated March 8, 1859, reference to which is made in the sale by the Bass heirs to Hauffe, is not contained in the record, and counsel inform us that the said plan cannot now be located. The width of Lot No. 23 as shown 'by Seghers on his plan of July 26, 1918, is 1 arpent, 2 toises, and 2 feet, which aggregates 206 feet 9 inches. The Sutch plan dated July 5, 1930, shows the width of Lot No. 23 to be the same as shown by Seghers, viz., 206 feet 9 inches.
*655 On January 9, 1932, Henry W. Hauffe, by two conveyances passed before Walter G. Wedig, Notary Public, disposed of the whole of Lot No. 23. Although Hauffe had acquired the property under a description reciting a definite width measurement of 206 feet 9 inches, and the plans referred to in his act of purchase also showed said measurement, in parting with title in the two sales before Notary Wedig, approximate measurements only were given, and no plan or plats of survey were referred to. Hauffe conveyed the west half of Lot No. 23 to R. John Lucas, the plaintiff herein (C.O.B. 466, folio 368), under a description describing the property as “ * * * being the one-half of Lot No. 23 fronting on the new highway and running about 16 arpents in depth, and measuring approximately 103 feet front by a depth of approximately 3300 feet more or less, and being that portion of Lot No. 23 adjoining the lot No. 21, measuring approximately one-half arpent front on the new State Highway by approximately 3300 feet in depth, and being part of the property acquired by H. W. Hauffe by purchase from the Bass et als, by act 'before Walter G. Wedig, Notary Public, registered in M.O.B. 1425 folio 241, on July 22sd, 1930 and registered in C.O.B. Conveyance Office Book 454 folio 656.”
Hauffe’s other sale was of the east half of Lot No. 23, which he conveyed to Robert E. Bertoniere and Walter C. Avegno (G.O.B. 464, folio 332). The act described the property sold as being " * * * that portion of Lot No. 23 in Gentilly adjoining the Orange Dale Sub-division and said piece or portion of property being the one-half of Lot No. 23 fronting on the New Highway and running about 16 arpents in depth and measuring approximately 103. feet front, by a depth of approximately 3300 feet more or less, and being part of the property acquired by Mr. H. W. Hauffe by purchase from the Bass et als, by act before Walter G. Wedig, Notary Public, registered in M.O.B. 1425, folio 241, July 22sd, 1930, and registered in conveyance office book 454 folio 656.”
Subsequently, the east half of Lot No. 23, which had been acquired by Bertoniere and Avegno from Hauffe, was also subdivided. Through mesne conveyances, the front portion of the east half of Lot No. 23, that is, the portion fronting on Gentilly Highway, by a depth of about 600 feet, was acquired by defendant Richard J. Patin. ' He acquired said front portion of Lot No. 23 from Hughree Brooks, on November 2, 1948, per act before Charles V. Macaluso, Notary Public, C.O.B. 560, folio 487, wherein the property was thus described:
“ * * * said portion of ground lies on the north side of New Gentilly Highway at the intersection of Wilson Avenue and is more particularly described in accordance with blue print of survey by Corwin A. Robert, C. E. & S., dated July 14, 1945, * * * as follows, to-wit:
“From an iron pipe set at the intersection of the northerly line of the New Gentilly Highway and the westerly line of Wilson Avenue, the westerly line of Wilson Avenue being also the easterly line of said Section 40; go thence westwardly along the northerly line of New Gentilly Highway (towards New Orleans) a distance of 117 feet to a fence, thence turn right and go northwardly along fence, a distance of 600 feet, 3 inches; thence turn right and go ea'stwardly, a distance of 111 feet, 4 inches, 4 lines to the westerly line of Wilson Avenue, thence turn right and go southwardly along the westerly line of Wilson Avenue, a distance of 600 feet to the point of beginning.”
Asset Realization Company, Inc., acquired the rear portion of the east half of Lot No. 23 from Carlsen and Avegno, on December 30, 1948, by act before John F. Stafford, Notary Public, C.O.B. 559, folio 543, wherein the width of the property was stated to be 103 feet more or less as shown on the survey of H. E. Sutch, C. E., of date July 5, 1930, and also on survey of W. F. Calongne, C. E. & S., dated December 23, 1948.
In the summer of 1932, a survey of the land involved in this suit, as well as of the surrounding property, was made in con *656 nection with the construction of the New Gentilly Highway. . Eustis surveyed for right of way purposes Highway No. 90 for the City of New Orleans, from Down-man Road to the Michaud Tract. In Lot No. 23 he claims he found that a surplus of 12 feet 1 inch and 1 line existed.
In the acquisition of the Asset Realization Company, Inc., the plan of W. F. Calongne, C. E. & S., dated December 23, 1948, is referred to, hut the said plan depicts no surplus in Lot No. 23. Ca-longne testified that he found a surplus or excess of 15.57 feet, which he shows on a later plan dated March 24, 1949. It was Calongne’s belief that the surplus of 15.57 feet, should be added to Wilson Avenue, and not allocated to Lot No. 23.
Plaintiff relies with confidence on the survey of Corwin A. Robert, C. E. & S., dated July 14, 1945, which was referred lo in several sales involving the front portion of the east half of Lot No. 23. Robert was not produced as a witness, but a photostatic copy of his plan of survey shows that a surplus of 9 feet 8 inches and 2 lines existed, which he divided equally between the west half and the east half of Lot No. 23, calculating that there was due to each half of the lot a width of 108 feet 2 inches and 6 lines.
A sketch of survey made by Horatio A. Gilbert, surveyor, dated May 25, 1948, shows the respective halves of Lot 23, and the width of each half of the lot is stated to be 108 feet 2 inches and 6 lines, which is in accord with the 'Robert plan. Gilbert evidently based his sketch on the survey of the property which had been made by Robert.
Also in evidence are photostatic copies of field notes and of a plan of T 12 S, R 12 E, made by George H. Grandjean, D.S., in 1873, for the United States government, which reflect that the eastern •boundary of Lot No. 23 rims along the line which divides Sections 40 and 41 of T 12 S, R 12 E. If the Grandjean plan is correct, apparently the surplus belongs in Section 40. However, there is some doubt as to what section the surplus is due, as Eustis, ‘ in' his testimony, was emphatic that he had no confidence in the United States field surveys made in the 1870’s, for the reason that they were, made by compass and with inferior chaining instruments, and that “although they seem to carry a good deal of weight with them it is not very hard to prove that they are full of error.”
In the judicial establishment of boundaries, R.C.C. art. 851 makes provision for the disposition of any shortage or excess contained in the land which is to be bounded, as follows: “If the titles exhibited call for a greater or less extent of land than the land which is to be bounded, contains, the limits must be so fixed as to divide proportionately among the parties interested the profit or loss resulting from this state of things.”
Both Calongne and Eustis were certain that the titles of all owners of property in Section 40 had been fully satisfied. It was Calongne’s 'belief that the surplus, existed in Section 40 and should fall into Wilson Avenue, but that if it did not fall into Wilson Avenue it should be proportionately distributed amongst all owners, in the section. Eustis stated that it was the practice of surveyors, when a surplus is found between two established streets, when there are no improvements in the-square which lies between those streets, that the surplus is prorated equitably amongst the interested parties, but that where the square is entirely “built up,” and if every title in that square has the-amount of ground called for, the surplus, is usually allowed to remain where it was-, found. Both halves of Lot No. 23 are-improved. On the front portion of the eastern half, owned by defendant Patin, there are located eight cabins, with underground plumbing, each located about five-feet from the boundary line between the western and eastern halves of the lot, and according to Eustis, if the surplus of 12 feet 1 inch and 1 line is to be attached to Lot No. 23 and the division line then drawn, the cabins would encroach upon the property of plaintiff,' which would create a hardship on defendant Patin. Eustis placed the surplus on the eastern *657 side of Lot No. 23, adjacent to Wilson Avenue, so that it can be used • to widen the street, at which locus the surplus would do the least harm to the parties concerned, after a consideration of the welfare of all.
We fail to perceive error in the manner in which the expert appointed by the court disposed of the surplus or excess. We do not believe it to be within the contemplation of the law that when a surplus exists it is obligatory that it be divided among the parties in interest under all circumstances, notwithstanding R.C.C. art. 851. If the excess is to be distributed among the parties owning Lot 23, undoubtedly benefit would accrue to plaintiff, ¡but, conversely, Patin would suffer severe disadvantage and considerable financial loss.
We are impressed with Eustis’ testimony that many government surveys made in the 1870’s are incorrect, and if this be so, we are not at all sure that the line between Sections 40 and 41 was correctly established by Grandjean in 1873, and it may be that whatever surplus there is belongs within the adjoining Section 41.
Then again, the exact amount of the surplus or excess is shrouded in doubt. None of the findings of the various surveyors agree in that respect. Eustis determined the excess strip as having a width of 12 feet 1 inch and 1 line by the depth of the propérty. Calongne found it to have a width of 15.57 feet. The Robert plan, upon which it seems that plaintiff places so much reliance, shows the surplus or excess to be 9 feet 8 inches and 2 lines. To adopt the contention .of plaintiff, the allotment of a supposed-surplus of 12 feet 1 inch and 1 line to Lot No. 23 would have the effect of benefiting Lucas’s property by adding to its east side a strip of land-having a width of about 6 feet by the full depth of the property, which would necessarily have to be taken from the property now embraced within the titles of the defendants, and upon which the defendant’ Patin maintains improvements on his portion. Patin and Asset Realization Company, Inc., would then be relegated to take the questioned surplus of 12 feet 1 inch and 1 line which, if it does exist, might possibly be the subject of future and serious litigation. We do not believe' that the placing of the surplus or excess, if such exists,- adjacent to Wilson Avenue does any injustice to plaintiff. An excess or surplus should only be divided after due deference to existing conditions, so-as not to work hardship upon any of the proprietors. In Weathersby v. Hogsett, 17 La.App. 1, 133 So. 391, 392 (certiorari denied), on rehearing, we said:
“ * * * In such situation such small surplus as may exist should be' permitted1 to remain divided among the property owners as it is already divided, unless some part of it is necessary to complete the title measurements of some property owner who may not have all that his title calls for. In the present case, if Weath-ersby’s property be fixed as commencing eight feet from the curb of Pitt street, he, will have a little more frontage on Eleonore street than his title calls for. The same will, exist with reference to the Hogsett property, . and no one in the square will be disturbed; whereas, if we hold that the Pitt street side of Weath-ersby’s property should be moved further away from Pitt street, then presently existing conditions within the square will be disturbed and presently'existing conditions along Pitt street, not only in that square, but in other squares, will be theoretically, at least, substantially disturbed.
“For these reasons we believe that present conditions should not be-interfered with, and that the boundary in dispute should remain ■ as now located, * *
Eustis concluded that each half of Lot No. 23 has a width of 103 feet 4 inches 5 lines, and the boundary was established accordingly. This division of the property accords almost exactly with the Calongne and the Robert plans, that is, if the surplus of 9 feet 8 inches, and 2 lines included in the Robert division- of the property is eliminated from consideration. And more important, Eustis’ width measurement'of the whole'of Lot 23 is 206 feet 9 inches and 2 lines, which *658 varíes only one-quarter of an inch from the width of the lot as set forth in the title of Henry W. Hauffe, the common ancestor in title of all parties to the litigation. We believe that the boundary as established by the official surveyor, as ■shown by his proces verbal and plan of survey, is the correct one.
The only other point left for consideration is the $500 fee allowed by the court below to the official surveyor for his services. Plaintiff mentioned in his brief that the expert surveyor neglected to ■comply with LSA-RS 50 :283 regarding a fixing of his fee, but counsel, in argument, informed us that he would not rely on the noncompliance with said section of the Revised Statutes as being a bar to allowing to the surveyor of a fee for services rendered.
Plaintiff does strenuously contend, however, that the fee is highly excessive and should be considerably reduced. The amount was fixed by the lower court, by whose order the services were performed, and we believe that the judge was in a position to fairly evaluate the services rendered. The expert’s proces verbal and his plan are, to say the least, comprehensive and reflect that considerable time and effort were consumed in making the survey, and we cannot say that a fee of $500 can be considered excessive under the circumstances.
The judgment ordered that one-third of the surveyor’s fee be paid 'by each of the parties, and the defendants complain that in that regard the judgment is erroneous, and contend that the full amount should be borne by the plaintiff, as he was the losing party in the suit. Defendants further argue that plaintiff’s steadfast refusal to agree to an extrajudicial fixing of the boundary before filing his suit would of itself make him legally responsible for the surveyor’s fee.
First, let it be said that it is not shown that plaintiff arbitrarily or capriciously refused to enter into negotiations with the defendants before filing suit. We think that the plaintiff was in good faith, and honestly believed that by the provisions of the law he was entitled to one-half of the surplus land. We doubt whether the parties could have ever reached an amicable agreement as to a fixing of the boundary, as the surplus was a prime consideration, and negotiations would have been unavailing.
Where there is a bona fide boundary dispute, and a judicial determination of the 'boundary is the only possible means for a final settlement of the dispute, costs of the proceedings should be divided between the parties, notwithstanding- that the plaintiff failed to establish his case. See Sharpless v. Adkins, La.App., 22 So. 2d 692.
For the reasons assigned, the judgment appealed from will be and it is hereby affirmed.
Affirmed.