McBRIDE, Judge.
This is an action in boundary coupled with a demand for damages in the sum of $500. Miss May R. Miller owns the property bearing Municipal Number 1823 Short Street, which is situated on Lot “P” of Square 246, Seventh District of New Orleans, measuring 33 feet 7 inches front on Short Street, the same width in the rear, by a depth of 107 feet 6 inches between equal and parallel lines. William T. Welsh, the defendant, owns tire adjoining Lot 18, the improvements on which bear the Municipal Number 1817 Short Street, Lot 18 having a frontage of 30 feet on Short Street, the same width in the rear, by a depth of 107 feet 6 inches between equal and parallel lines.
Miss Miller alleges in her petition that there had been for more than thirty years a conventional type wooden fence between her property and that of the defendant; that this fence had been erected in 1918 and remained standing and fixed the boundaries between the respective properties until sometime in the year 1950. She alleges that she and her ancestors in title have had the uninterrupted, peaceable and continuous possession of all property on her side of the fence until the fence was removed by the defendant in 1950 with her permission, under the distinct understanding that a new fence would be erected and placed on the exact line of the old fence; that after the fence was removed, Welsh claimed approximately 7 inches of plaintiff’s ground and refused to allow the fence to be rebuilt unless he be given the strip of ground which he claimed. The plaintiff obtained several bids from carpenters for the cost of the erection of a new fence, and called upon Welsh to secure his bids. This Welsh failed to do, and the petition alleges that he arbitrarily refused to allow the erection of any fence between the properties, hence this suit to judicially establish the boundary.
The petition further alleges that the defendant’s arbitrary attitude has caused her much unnecessary expense, and that he is liable to her in damages under the provisions of LSA-C.C. art. 855; that it was necessary for her to secure the services of an independent surveyor at a cost of $25, in an effort to convince defendant of the correctness of the boundary line as formed by the old fence; further, that defendant’s actions compelled her to employ attorneys to institute and prosecute the present suit entailing an expense of $300' for counsel fees; further, that the day after Welsh removed the old fence he trespassed upon plaintiff’s ground and removed plants, from her garden.
The trial below resulted in a judgment establishing the boundary on the same line whereon the old fence had existed for over thirty years, and defendant was condemned to pay plaintiff damages in the sum of $250; the judgment further ordered that a new fence be erected at the joint expense of both litigants. Defendant has appealed, and plaintiff has answered the appeal praying for an increase in the amount of the damages to the sum of $500 as originally prayed for.
The record shows that the boundary line between the property of the respective litigants has never been fixed in accordance with the requisites set forth in LSA-C.C. art. 823 et seq. A Mr. J. P. St. Martin acquired one-half of Square 246, Seventh. District, in the year 1915, and retained ownership thereof until the early part of 1918. He testified that before parting with title to the property he erected a wooden fence along the boundary line between what is now Lot “P,” owned by Miss Miller,, and Lot 18, now owned by the defendant. This witness testified that he laid out the fence on a line staked out for him by a surveyor named C. Uncas Lewis.
Thomas W. Hooley, Sr., an old-time resident of the neighborhood, whose property adjoins the Miller property in the rear,, testified that the fence erected by St. Martin tied in exactly with his fence line in the rear of the Miller property, and that the fence had been erected prior to the year 1918 and remained in place for a period of more than thirty years.
Louis Heck'er, defendant’s predecessor in title, testifying as a witness for plaintiff, *27 stated that he owned the Welsh property from 1922 to 1944, and he verifies that the fence erected by St. Martin existed during his tenure of ownership of the now Welsh property. He stated that he once had his property surveyed, and that the report of his surveyor reflected that the fence did not in anywise encroach upon Lot 18.
Much of the briefs and oral argument of counsel touched upon the point whether acquisitive prescription had accrued in favor of Miss Miller as against a small strip of property which the defendant contends legally belongs to his Lot 18 and which was cut off by the fence built by St. Martin. It is not necessary to discuss any question of prescription for the simple reason that the fence had run along the correct title boundary line separating the property of the respective parties.
When St. Martin erected the fence, it ran for the whole depth of the property, that is, from the front property line to the rear line. On two occasions, between 1935 and 1944, front sections of the fence had been removed pursuant to agreements made between the then respective owners of the properties in question. However, from a point 15 feet from the front line the original fence remained in the exact position where it had been placed by St. Martin up to 1950, more than thirty years, when, because of its dilapidated condition, it was removed by the defendant, Welsh, with the consent of Miss Miller, under the understanding that a new fence would be erected on the line on which the old one then stood.
Welsh would never consent to a replacement of the fence on the original line, his attitude being that the fence should be replaced at a point 7 inches over on the Miller property, contending that the old fence had cut off and enclosed a strip of his land of that dimension. The record also shows that Miss Miller, at various times, secured several bids for the erection of a new fence, but Welsh was non-cooperative, even so far as to refuse carpenters employed by Miss Miller to go upon his property in the process of constructing a new fence.
The only expert testifying in the case was Frank G. Stewart, Civil Engineer and Surveyor, who was appointed by the trial judge to inspect the premises of the respective parties and to ascertain and mark the line of the old fence between the properties.
Stewart made his survey on July 3, 1951 and submitted in connection therewith a procés verbal of his work. According to the procés verbal, Stewart, without difficulty, ascertained the position of the original fence, as he found the stumps of several posts which had supported it still embedded in the ground. By employing instruments the surveyor was able to determine the line of the original fence which, according to the plan, corresponds exactly with the line boundary of Miss Miller. We experience no difficulty in arriving at the conclusion that the fence erected by ,St. Martin about 1918 and which had been removed in 1950 by the defendant was located along the true boundary line. Therefore, no question of prescription is involved in this controversy.
The defendant labors under the impression that the fence encroached for the full length of his property to the extent of 11 inches in front tapering down to 2 inches in the rear. Welsh acquired his lot on November 9, 1944 and annexed to the act of sale is a blueprint of a plan of Horatio L. Gilbert, Surveyor, dated October 19, 1944, which reflects the existence of such an encroachment. However, Gilbert was not produced as a witness, and as against Stewart’s findings there is not a word of countervailing evidence.
The trial judge correctly established the boundary between the respective properties exactly along the same line on which the original fence had been located, and his judgment fixing the line, shown and set forth on the plat of survey of Frank G. Stewart, Civil Engineer and Surveyor, dated July 3, 1951, on file in these proceedings, must be affirmed. The judgment ordered that a new fence be erected at the joint expense of both parties, but as there is no controversy as to this part of the judgment, we do not think it should be disturbed.
*28 We now pass to a consideration of plaintiff’s demand for $500 damages. The foundation of the claim is said to be LSA-C.C. art. 855, which reads as follows:
“If any one removes or pulls up bounds, which have been fixed, either provisionally, or definitively, without being authorized by a decree of the court, he is liable to an action of damages on the part of the owner whose bounds he has removed or torn up, and may be condemned to place them in the situation they were before.”
We do not think that the quoted codal article has any application to this case. Previously no boundary had ever been fixed “either provisionally, or definitively” in accordance with the provisions of the law. Furthermore, the aged and dilapidated fence was removed by the defendant with plaintiff’s consent, it being agreed at the time of the removal that a new fence would be erected and placed in the same location as the old one stood. It seems to us that the purport of LSA-C.C. art. 855 is that it condemns in damages one who willfully and maliciously removes or obliterates bounds which have been fixed in accordance with law, and the article was never designed to apply to one who removes evidences of the boundary under an amicable agreement made with the owner of the adjoining property.
In no event can plaintiff be held entitled to a recovery of the damages which she demands. As to the item of $25 for having an independent survey made to convince defendant of the extent of her property, the same should be disallowed. Gandolfo, who made the plan, was not called or produced as a witness by plaintiff, nor was his survey introduced into evidence, and his fee cannot be said to be taxable as costs as though it were a fee due an expert witness who gives testimony in a judicial proceeding. Nor is there any statutory provision or precedent which would warrant the allowance of this $25 as an item of damages in a case such as this. Plaintiff also contends that she is entitled to recover the value of certain plants which resulted from defendant’s trespass upon her property after the removal of the old fence. There is no testimony showing, or even tending to show, the extent of the damage caused by defendant’s actions.
Plaintiff recovered $250 as damages, and in the absence of reasons for judgment a reasonable assumption is that the award was made to recompense plaintiff the amount expended for the fees of her counsel in prosecuting this action. We think that the allowance was highly improper. Attorney’s fees as damages are not ordinarily allowed in a civil action in the absence of statute or contract. Meraux & Nunez v. Gaidry, 171 La. 852, 132 So. 401. We know of no law or authority which could form the basis for the assessment as damages of a plaintiff’s expense for counsel’s fees in prosecuting an action in boundary.
In Cooper v. Cappel, 29 La.Ann. 213, involving an action in trespass, attorney’s fees were allowed as an element of damages. In Williams v. Harmanson, 41 La. Ann. 702, 6 So. 604, which was a posses-sory action, the fees paid by plaintiffs to their counsel were assessed as damages against the defendant.
However, in two recent cases decided by the Supreme Court, namely, Rhodes v. Collier, 215 La. 754, 41 So.2d 669, and Efner v. Ketteringham, 217 La. 719, 47 So.2d 331, both possessory actions, attorney’s fees were disallowed since the plaintiffs had offered no proof to establish their claims. However, in both cases, the Court mentioned Cooper v. Cappel, supra, and Williams v. Harmanson, supra, intima-ing that the doctrine in those cases allowing attorney’s fees as an element of damages is not sound. In Rhodes v. Collier, supra, [215 La. 754, 41 So.2d 673] the Court said:
“ * * * in those cases, it is apparent that little or no consideration was given to the general rule that attorneys’ fees are not recoverable in civil actions as a reading of the opinions will disclose that the Court simply assumed that an allowance for fees of counsel was proper.”
In Bryson v. George, 31 So.2d 492, decided by the Court of Appeal for the Sec *29 ond Circuit, it was held that attorney’s fees are not allowable to successful plaintiffs in a possessory action.
The fee of Stewart, the expert appointed by the court to make the survey of the properties and report his findings, fixed at $50, was assessed along with the other costs of the suit against the defendant. The $50 fee was correctly assessed. Where a party, as did the defendant in this case, declines to settle the boundary amicably with the adjacent owner and forces him to resort to litigation, equity requires that he should bear the burden of the costs if cast. Dufrene v. Bernstein, 190 La. 66, 181 So. 859, and cases there cited.
Therefore, for the reasons assigned, that part of the judgment appealed from which awards plaintiff damages against the defendant in the sum of $250 be and the same is reversed, and the judgment is amended now so as to dismiss plaintiff’s claim for damages, and as thus amended and in all other respects the judgment appealed from is affirmed. The plaintiff-appellee is to pay the costs of this appeal.
Reversed in part; affirmed in part.