McBRIDE, Judge.
This is an action to fix the boundary between two improved lots of ground in the City of New Orleans situated in Square 309, bounded by North Rampart, Andry, Burgundy and Flood (formerly Vernon) Streets.
The plaintiffs, Joseph Randazzo and his seven children, issue of his marriage with’ Frances Cutitto, deceased, are the owners' of Lot “K” of said square, and the defendants, who are husband and wife, are the' owners in community of the adjoining lot designated by the letter “L”. The plaintiffs allege the fence between the properties is not on the correct boundary line but encroaches upon their property.
The case was previously before us on the appeal of defendants from a judgment of the district court which established the boundary and ordered defendants’ fence moved to the correct line. In that appeal' we reversed the judgment because we were of the opinion that the surveyor appointed by the court to survey the properties and fix the boundaries under art. 833, LSA-C.C., did not comply with the formalities of law in making his survey, and, accordingly, we remanded the matter to the Civil District Court for the purpose of having the prop *492 erties resurveyed and for further proceedings in accordance with law, La.App., 92 So. 2d 398.
After said remand, Harry E. Sutch, the court-appointed surveyor, resurveyed the property pursuant to law and submitted his procés-verbal, and thereafter the matter proceeded to trial on the issues made up by the pleadings. A judgment was ultimately rendered in plaintiffs’ favor and against the defendants fixing the boundary between Lots “K” and “L” in Square 309, as located by H. E. Sutch on his survey dated March 23, 1957; defendants were condemned to remove their fence to the proper boundary line; the fee of Sutch for services in making the survey and rendering his procés-verbal was fixed at $350 and an expert witness fee of $100 was allowed to E. L. Eustis, a, civil engineer and surveyor, who testified for plaintiffs, and said fees and all costs in the suit were taxed against defendants.
' Defendants have appealed from the judgment.
. The Security Building & Loan Association, which held a mortgage on Lot “L,” had also been impleaded as a defendant, but the judgment is silent as to said party and we take it that the demands as against it were dismissed. We notice also that defendants called their vendor in warranty but no disposition was made by the lower court of this call in warranty, and as the warrantor has not even been alluded to by appellants, we conclude they are not interested in pursuing the alleged claim against him.
In the court below defendants interposed certain exceptions to the suit which were overruled, but they are reurged before us. Appellants argue that the trial judge should have maintained the exceptions of no cause of action and misjoinder of parties-plaintiff and ordered the plaintiffs to cause to be opened the succession of Mrs. Frances Cu-titto Randazzo and first obtain a judgment recognizing the heirs of said decedent and placing them in possession of her estate as a prerequisite to appearing in court and standing in judgment herein as co-owners of Lot “K.”
 Lot “K” was acquired by Joseph Randazzo during the regime of the community of acquets and gains existing between himself and Frances Cutitto Ran-dazzo. Affidavits in the record show that these parties had been married but once and then to each other and that the latter died intestate on April 24, 1954; that the co-plaintiffs of Joseph Randazzo are the children of said marriage and as such they are decedent’s only heirs. The affidavits make the further recitation that the decedent had never adopted anyone nor was she herself ever adopted. We believe that such proof, which is the same type that could have served as the basis for an ex parte judgment of possession in any succession proceedings of Frances Cutitto Randazzo, had such been opened, is a sufficient showing of heirship to allow the heirs to appear as co-plaintiffs in this suit. The case might be different had the defendants herein denied that the children are the heirs of the decedent, but the defendants make no such denial and are only contending, as a foundation for the exceptions, that before the children can appear they must have been recognized in a court of probate and sent into possession by formal judgment. It is the settled law that an heir can sue directly without having been recognized by the probate court when he can prove his heirship and right to recover the property as heir. Catlett v. Catlett, La. App., 99 So.2d 135, and the several cases therein cited.
Moreover, the action would be maintainable by Joseph Randazzo alone as he is the owner of an undivided one-half of the property as surviving husband and the legal usufructuary of the share of the decedent which devolves to the children of the marriage. Our Civil Code provides that the action in boundary may be instituted not only by the owner but by any person who possesses as owner, or by the usufructuary. LSA-C.C. arts. 556, 829, 830. In Deshotels v. Guillory, La.App., 161 So. 217, it was *493 held that the owner of an undivided interest in land who was legal usufructuary of the other portion could properly maintain a boundary suit.
There is no merit to the exceptions.
The defendants in answer aver that their fence is on the correct line and deny there is any encroachment. And, in the alternative, they make the plea that if their fence encroaches on the land of plaintiffs, they and their authors in title have been in possession of that portion of plaintiffs’ land within the fence for a period of more than ten years and that the existence of said fence along the supposed boundary line for said period creates a continuous apparent servitude in their favor and, therefore, they cannot be required to move the fence.
Before engaging upon a discussion of the expert testimony pertaining to the fixation of the boundary, it should be mentioned appellants have abandoned the contention set forth in their answer that the fence runs along the true boundary line. In argument before us and also in brief they concede an encroachment on plaintiffs’ lot as is shown by two surveys of their property, one having have made in 1942 at the behest of a former owner and the other having been made in 1950 when they purchased Lot “L.” Thus, since acquiring their title, appellants have had under fence a portion of plaintiffs’ adjoining property and defendants had knowledge of this state of affairs.
Sutch, the court-appointed surveyor, from 1926 to 1934, was connected with the New Orleans City Engineer’s office, most of the time as City Surveyor, and had occasion in his official capacity to set out the line of Andry Street, which he did by establishing it from the Castaing-Caffin line which was at the time marked by stones, some of which are still in existence. In connection with the instant survey, the first thing Sutch did was to establish the line of Andry Street by taking into consideration all of the surveys thereof from Rocheblave Street, some distance away, all the way into Burgundy Street. He averaged the surveys which he said agreed closely with each other, and from the line of Andry Street thus established, he measured along Rampart Street to establish the location of the various lots in Square 309 fronting thereon.
According to plaintiffs’ title, Lot “K” begins a distance of 145,2"3,,/ from the corner of North Rampart and Andry Streets and measures thence 38' front on North Rampart Street, by the same width in the rear. Sutch found that the titles of the lots fronting on North Rampart Street in Square 309 between Andry Street and the Castaing-Caffin line aggregate a frontage on North Rampart Street of 221'2"3///. He measured that distance along Rampart Street toward Flood Street and then measured 38' from this line toward Andry Street. This point, Sutch stated in his procés-verbal, is the dividing line of Lots “K” and “L” and is at a distance of 183'2"3W from Andry Street. He shows the boundary on his survey dated March 23, 1957, which forms the basis of the judgment. The boundary as fixed is marked by iron pipes driven into the ground at the front and rear ends of the line. Sutch’s survey reflects that defendants’ fence encroaches onto plaintiffs’ property a distance of I'IF'4'" on Rampart Street and 2' in the rear.
Sutch testified that when he ran Andry Street for the City of New Orleans about 1930, it was then considered as a temporary line but was used when gravel was laid on the street and for the purpose of putting in ditches, etc. Defendants’ counsel argues that the line of Andry Street from whence Sutch located the boundary between the respective properties involved in this suit was measured from a temporary line and that there is no showing whatever that the temporary line was the correct place to start the measurement. There is nothing to lead us to believe the line of Andry Street established in 1930, though then called temporary, was incorrect and not the true line, and nothing Sutch said can be so construed. Sutch now recognizes it as the permanent line of Andry Street, and his findings in *494 making the survey for the court in connection with this lawsuit in our opinion, only tend to confirm the correctness of the street line established in 1930.
E. L. Eustis, a well-known and highly regarded surveyor, appeared as an expert witness for the plaintiffs and testified that in April of 1954, before the inception of this suit, he made a survey of plaintiffs’ Lot “K,” and found the fence between the properties off line and with an encroachment on plaintiffs’ property of 2'2" on North Rampart Street and 2'0"6/// in the rear or slightly more than Sutch found.
J. J. Krebs, who we must say is likewise a well-known and highly-regarded surveyor, appeared as the expert witness for defendants and disagreed with Sutch as to the location of the boundary line. Krebs’ plan dated July 1, 1950, made upon defendants’ purchase of their property, shows the fence encroaches 9"4'" on plaintiffs’ property. He fixes the boundary line about 1'2" nearer to Andry Street than does Sutch.
A plan of Horatio L. Gilbert, who surveyed Lot “L” for a former owner thereof in 1942, shows the fence encroaches on Lot “K” a distance of 1'8", and that the boundary line is a little nearer Andry Street than Sutch placed it. Gilbert did not appear as a witness.
The divergence of opinion as to the location of the true boundary line results solely from the respective surveyors’ conclusions as to where the location of Andry Street is, and we are satisfied that Sutch in making his survey commenced the measurements from the correct line of said street. His survey is comprehensive, and in locating Andry Street he took for his starting point well-known monuments in the City of New Orleans which corresponded with the distances shown on D’Hemecourt’s original map of the city.
Taking all of the expert testimony and opinions into consideration, we could not go so far as to say that the surveys made by Messrs. Krebs and Gilbert, which are not in themselves in accord, are superior to and should be accepted in lieu of the surveys made by Messrs. Sutch and Eustis which more nearly coincide. We think the trial court was warranted in establishing the boundary as it is shown on the Sutch survey.
The encroaching wire fence was erected more than ten years ago, and defendants are claiming that under LSA-C.C. art. 765 they have acquired a continuous apparent servitude in their favor and they cannot be forced to move the fence.
Defendants do not claim any title by prescription to that part of plaintiffs’ land their fence encloses, but they are merely contending for the right to maintain the fence at its present location under the alleged servitude. Therefore, as no title to the strip of land is claimed, we shall not discuss the question of prescription insofar as it might pertain to the ownership thereof, but rather will confine ourselves solely to the proposition whether a servitude exists and whether defendants may maintain the fence at its present and erroneous location.
Initially, we state we do not believe that under the laws of this state there is any such thing known as a “servitude of boundary fence.” At any rate, the prescription defendants rely upon is provided for by LSA-C.C. art. 765, which in part reads as follows:
“Continuous and apparent servitudes may be acquired by title, or by a possession of ten years. * * * ”
Plaintiffs’ counsel argues in effect that as defendants are in bad faith in maintaining the fence beyond the boundary line, the only prescription that they could possibly claim would be that set forth in LSA-C.C. art. 3504, which reads as follows:
“A continuous apparent servitude is acquired by possession and the enjoyment of the right for thirty years uninterruptedly, even without a title or good faith.”
*495 It has been settled by the Supreme Court that the article which refers to the prescription of ten years relates to those cases in which good faith is required, and the other, which mentions the prescription of thirty years, concerns cases in which no good faith is required, and, therefore, applies where the possession is even characterized by bad faith. Kennedy v. Succession of McCollam, 34 La.Ann. 568.
Conceding arguendo, but not deciding, that it is possible that a “servitude of boundary fence” might be acquired by prescription under R.C.C. art. 765, an inquiry must be made to determine whether defendants were in good faith in the premises as no prescriptive servitude could accrue to their advantage under the article were it otherwise. Their title calls for a 38-foot width in Lot “L” but notwithstanding this, defendants had a width of 40 feet under fence or more than they owned. They had full and complete knowledge and notice of this circumstance because the survey made for their account by Krebs to facilitate the passing of title to Lot “L” to them clearly reflected that the fence located nearest to Andry Street was not on the boundary line but enclosed a portion of land which their vendor did not own and could not convey to them. So if good faith is a prerequisite for the acquisition of a servitude by the prescription of ten years as was held in Kennedy v. Succession of McCollam, supra, then we say that the plea is unavailing to defendants as the record points up their utmost bad faith. The plea is overruled.
The trial judge fixed Sutch’s fee at the sum of $350, which appellants contend is excessive and should be reduced to a proper amount.
In Lucas v. Asset Realization Co., Inc., La.App., 51 So.2d 652, the question of the fee allowed the official surveyor was in dispute, and we approved the sum of $500. However, this allowance cannot be used as a guide or criterion here for the reason that the surveyor laid out and surveyed two large tracts of land, not small city lots such as are involved in the instant case.
In Bernard Co., Inc., v. Cook, La.App., 59 So.2d 170, when there was a dispute as to what amount should be awarded the surveyor for surveying two small city lots of ground, we approved a fee of $150.
The trial judge in Miller v. Welsh, La. App., 66 So.2d 25, fixed the fee due the court-appointed surveyor at $50 and assessed the same as part of the costs to be borne by defendant. There was no contest over the amount and the only disagreement was who should be assessed with the fee. We held the assessment against defendant to be proper.
In City of New Orleans v. Salcedo Oil Co., Inc., La.App., 94 So.2d 156, the surveyor was allowed $300, and we taxed the fee as costs of the suit even though the court refused to accept the boundary line as established by the surveyor. There was no controversy as to the amount of the fee.
Considering the work done by Sutch in the instant case, we are of the firm opinion that the fee of $350 is excessive. It is true Sutch made two surveys the first of which was held by us not to comply with the law, but, of course, he is entitled to no remuneration for his labors in connection therewith. He is only entitled to a fee for the second survey, and we feel that a fee of $200 would be fair and equitable.
The fixing in the judgment of a fee for the surveyor appointed by the court under LSA-C.C. art. 833 et seq., was proper and it must be taxed against the litigants as directed by law. Sutch can be regarded as an employee of the court, and as the work which he performed was done under the eyes of the court, his compensation is a matter to be covered by the judgment. See Williams v. Close, 14 La.Ann. 737.
Appellants also make the contention that the trial judge fell into error when assessing against them the whole of Sutch’s fee, and they argue that as Sutch’s work enured *496 to the benefit of both parties, the fee should be assessed against them in equal proportions.
Plaintiffs allege in their petition they endeavored to obtain the consent of defendants to extrajudicially fix the boundary between their respective lands, but that defendants refused this. Defendants specifically deny the allegation and affirmatively allege that they have been willing to fix the boundaries but were in disagreement with the plaintiffs as to where the boundary line should be set out.
No testimony whatever emanated from either plaintiffs or defendants and the only testimonial proof in the record was given by the expert witnesses and this pertains to the question of boundary. We have no way of knowing whether the defendants refused to enter into an agreement with plaintiffs as to a survey of the properties and the establishment of the proper boundary line between them or whether any demand, was made upon them at all. We cannot presume because defendants knew-of the encroachment on plaintiffs’ property, they would have refused to agree to the establishment of the boundary had formal demand been made by plaintiffs. It is only where the defendant refuses to have the boundaries fixed that the charges for the survey follow the judgment, and amicable demand on the one side and a refusal to have the boundary determined peacefully on the other must be proven. Otherwise, the costs of survey and establishment of the division line must be paid jointly by plaintiff and defendant, one half by each. LSA-C.C. art. 663; Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Gaude v. Williams, 47 La. Ann. 1325; Miller v. Welsh, La.App., 66 So.2d 25; Smith v. Scarpengos, La.App., 56 So.2d 757; Lucas v. Asset Realization Co., Inc., supra; Olivier v. Melancon, La. App., 40 So.2d 683; Sharpless v. Adkins, La.App., 22 So.2d 692; Fairbanks v. Louisiana Central Lumber Co., La.App., 163 So. 209; Deshotels v. Guillory, supra; May v. Cuthbert, 14 La.App. 604, 122 So. 130; Dwyer v. Smith, 10 La.App. 506, 121 So. 341; Gaubert v. Gaubert, 1 La.App. 719; Sonnier v. Sonnier, 1 La.App. 212; Capo v. Blanchard, 1 La.App. 3.
The cost of the official survey should be borne in equal proportions as between the plaintiffs and defendants and the court erred in assessing the full amount to defendants.
Appellants are correct in their contention that the lower court prematurely fixed a fee for the expert witness Eustis, whom plaintiffs produced. There is no authority in law for fixing in the judgment rendered at the termination of the case the fee of an expert witness who appears and testifies at the behest of one of the parties. It is true there can be found some reported cases wherein the court in the main judgment fixed a fee for an expert witness who. had been brought into court by a litigant ón his behalf, but it will be noted that in those cases no complaint was made regarding the fixing of the fee and the judgment was allowed to stand. If Eustis is entitled to a fee as an expert witness for plaintiffs, such should be fixed only after the trial of a rule to tax the fee as costs.
In Turner v. Peoples Industrial Life Ins. Co., La.App., 180 So. 435, 441, we said this
“The judge, a quo, however, erred in including in the judgment an award of $25 as a fee for plaintiff’s expert witness. There seems to have been no rule to tax this fee as costs. There should have been such a rule, as, on the trial of that rule, the expert would have been forced to appear and would have been subjected to examination and to cross-examination and countervailing proof could have been offered as to the value of his services.
“In Egan v. Hotel Grunewald Company, Ltd. et al., 129 La. 163, 55 So. 750, 753, the Supreme Court refused to allow the fees claimed on behalf of some of the'experts, saying:
*497 “ ‘Some of the experts who testified did not appear on the trial of the rule to tax costs and submit themselves to an examination by defendants.’
“See, also, Cutitto v. Metropolitan Life Insurance Company, La.App., 172 So. 812. If the fee of this expert can be justified, the matter can be taken care of in a proper proceeding in the form of a rule to tax costs in the court a qua.”
See, also, Long v. Louisiana Highway Commission, La.App., 2 So.2d 683.
For the reasons above assigned, it is ordered, adjudged and decreed that the fee of H. E. Sutch, the official court-appointed surveyor, be reduced to the sum of $200; that that portion of the judgment allowing E. L. Eustis an expert witness’ fee of $100 and that portion of the judgment which taxes all costs against defendants be reversed, and it is now ordered that the judgment appealed from be amended so as to-cast the plaintiffs for one-half of the fee of the official surveyor and the defendants for the other half thereof, and that all other costs of the proceedings be paid by the defendants; and as thus amended and in all other respects, the judgment is affirmed. Costs of the present appeal are to be borne by plaintiffs.
Reversed in part; amended and affirmed in part.
REGAN, J., absent, takes no part.